The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

8

9 | Civil Action No. 13-cv-01836-RSM

10

11 *In re Atossa Genetics, Inc.* | **LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
*Securities Litigation*

12

13 Note on Motion Calendar:  April 13, 2018

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAD PLAINTIFFS' MOTION                                    Zwerling, Schachter & Zwerling, LLP
FOR PRELIMINARY APPROVAL                              1904 Third Avenue, Suite 1030
OF CLASS ACTION SETTLEMENT                          Seattle, WA 98101-1170
2:13-cv-01836 RSM                                              Tel.: (206) 223-2053

## Table of Contents

I.    Introduction ...................................................................................................... 1
II.   Factual and Procedural Background. ................................................................ 1
   A.    The Factual Allegations.............................................................................. 1
   B.    Procedural Background ............................................................................... 2
   C.    The Parties Reach an Agreement. ............................................................... 4
   D.    Terms of the Proposed Settlement ............................................................. 4
ARGUMENT ............................................................................................................. 4
III.   The Settlement Meets the Criteria Necessary for Preliminary Approval ........... 4
   A.    The Proposed Settlement is Within the Range of Judicial Approval.............. 6
   B.    There Are No Obvious Deficiencies. ........................................................... 9
   C.    The Proposed Settlement is the Product of Serious Non-Collusive Negotiations. ........... 10
IV.   The Court Should Conditionally Certify the Class........................................... 10
   A.    Rule 23(a) ............................................................................................... 11
      1.    Numerosity ......................................................................................... 11
      2.    Commonality ...................................................................................... 11
      3.    Typicality........................................................................................... 12
      4.    Adequacy ........................................................................................... 13
   B.    The Class Merits Certification Under Rule 23(b)(3). ................................. 13
V.    The Notice Program is Adequate and Constitutes Due and Sufficient Notice Under Rule 23, Due Process, and the PSLRA................................................................. 14
VI.   Proposed Schedule of Events. ....................................................................... 17
VII.  Conclusion .................................................................................................... 17

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

i

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Authorities**

**Cases**

*Alberto v. GMRI, Inc.,*
     252 F.R.D. 652 (E.D. Cal. 2008) ................................................................. 5

*Arthur v. Sallie Mae, Inc.,*
     No. 10-cv-00198-JLR, 2012 WL 4076119 (W.D. Wash. Sep. 17, 2012) ..................... 9

*Basic Inc. v. Levinson,*
     485 U.S. 224 (1988) ................................................................................ 13

*Blackie v. Barrack,*
     524 F.2d 891 (9th Cir. 1975) .............................................................. 11, 13

*Burton v. Trinity Universal Ins. Co.,*
     No. CV 14-242-M-DWM, 2015 WL 11090362 (D. Mont. Nov. 17, 2015) ........... 6

*Churchill Village v. Gen. Elec.,*
     361 F.3d 566 (9th Cir. 2004) ............................................................... 6, 10

*DSAM Glob. Value Fund v. Altris Software,*
     288 F.3d 385 (9th Cir. 2002) ................................................................. 7

*Dunakin v. Quigley,*
     99 F. Supp. 3d 1297 (W.D. Wash. 2015) ............................................... 11

*Epstein v. MCA, Inc.,*
     50 F.3d 644 (9th Cir.1995) .................................................................. 10

*Ernst & Ernst v. Hochfelder,*
     425 U.S. 185 (1976) ............................................................................ 6

*Freedman v. Louisiana-Pac. Corp.,*
     922 F. Supp. 377 (D. Or. 1996) .......................................................... 13

*Hanlon v. Chrysler Corp.,*
     150 F.3d 1011 (9th Cir. 1998) ........................................................ 12, 13

*Harris v. Palm Springs Alpine Estates, Inc.,*
     329 F.2d 909 (9th Cir.1964) ............................................................... 13

*Hesse v. Sprint Corp.,*
     598 F.3d 581 (9th Cir. 2010) ............................................................... 9

*HsingChing Hsu v. Puma Biotechnology, Inc.,*
   No. SACV150865AGJCGX, 2017 WL 6210803 (C.D. Cal. Dec. 8, 2017) ..................... 11, 12

*In re Bluetooth Headset Prod. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ......................................................................................... 4, 10

*In re Cooper Companies Inc. Sec. Litig.,*
   254 F.R.D. 628 (C.D. Cal. 2009) ....................................................................10, 11, 13, 14

*In re Hot Topic, Inc. Sec. Litig.,*
   No. CV1302939SJOJCX, 2014 WL 12462472 (C.D. Cal. Nov. 3, 2014) ............................ 11

*In re Immune Response Sec. Litig.,*
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................................. 7, 8

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) .............................................................................................................. 14

*Nat'l Fed'n of Blind of California v. Uber Techs., Inc.,*
   No. 14-CV-04086 NC, 2016 WL 9000699 (N.D. Cal. July 13, 2016) .................................... 6

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
   688 F.2d 615 (9th Cir. 1982) ................................................................................................. 5

*Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.,*
   303 F.R.D. 337 (E.D. Cal. 2014) ............................................................................................ 5

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ............................................................................................... 12

*Ramirez v. Ghilotti Bros. Inc.,*
   No. C12-04590 CRB, 2014 WL 1607448 (N.D. Cal. Apr. 21, 2014) ...................................... 9

*Rinky Dink Inc v. Elec. Merch. Sys. Inc.,*
   No. C13-1347 JCC, 2015 WL 11234156 (W.D. Wash. Dec. 11, 2015) ................................. 10

*Ruch v. AM Retail Grp., Inc.,*
   No. 14-CV-05352-MEJ, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) ................................. 9

*Scott v. United Servs. Auto. Ass'n,*
   No. C11-1422-JCC, 2013 WL 12251170 (W.D. Wash. Jan. 7, 2013) ................................. 5, 8

*Spann v. J.C. Penney Corp.,*
   314 F.R.D. 312 (C.D. Cal. 2016) ....................................................................................... 5, 9

*State Farm Fire & Cas. Co. v. Doucette*,
    No. C16-5169BHS, 2016 WL 4793294 (W.D. Wash. Sept. 14, 2016) ........................................ 6

*Stoneridge Inv. Partners, LLC v. Sci.Atlanta, Inc.*,
    552 U.S. 148 (2008) ........................................................................................................................ 6

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .......................................................................................................... 5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................................................ 9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................................................... 11

**Statutes**

Private Securities Litigation Reform Act of 1995 (PSLRA),
    15 U.S.C. § 78u-4(a) ........................................................................................................... 3, 8, 9, 15

Securities Exchange Act of 1934,
    17 C.F.R. § 240.10b-5 ..................................................................................................................... 3

**Rules**

Fed. R. Civ. P. 23,
    (a) ........................................................................................................................................... passim
    (b) ....................................................................................................................................... 13, 14
    (c) ....................................................................................................................................... 14, 15
    (e) ................................................................................................................................. 1, 14, 15

**Other Authorities**

Bulan, Laarni T., *Securities Class Action Settlements: 2016 Review and Analysis*,
    https://corpgov.law.harvard.edu/2017/04/18/securities-class-action-settlements-2016-review-
    and-analysis/ ................................................................................................................................... 7

Cornerstone Research, *Securities Class Action Settlements: 2016 Review and Analysis*,
    https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-
    Review-and-Analysis ...................................................................................................................... 7

Manual For Complex Litigation (Fourth),
    § 21.632 (2004) .............................................................................................................................. 5

LEAD PLAINTIFFS' MOTION        iv        Zwerling, Schachter & Zwerling, LLP
FOR PRELIMINARY APPROVAL                   1904 Third Avenue, Suite 1030
OF CLASS ACTION SETTLEMENT                  Seattle, WA 98101-1170
2:13-cv-01836 RSM                                 Tel.: (206) 223-2053

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    Introduction[1]

Plaintiffs Miko Levi, Bandar Almosa, and Gregory Harrison ("Lead Plaintiffs") respectfully request that the Court preliminarily approve a settlement resolving this shareholder class action for a cash payment of $3,500,000 (the "Settlement"). The proposed Settlement represents almost 27 percent of the estimated damages – an excellent recovery for the Class after more than four years of litigation, including a successful Ninth Circuit appeal. The Court should thus preliminarily approve the Settlement because it is "fair, reasonable and adequate," as required by Fed. R. Civ. P. 23(e)(2).

Lead Plaintiffs respectfully ask the Court to enter the proposed Order Preliminarily Approving Settlement and Authorizing Notice and Scheduling Settlement Hearing (the "Preliminary Approval Order"). Among other features, the Preliminary Approval Order (a) preliminarily approves the terms of the proposed settlement as set forth in the Stipulation and Agreement of Settlement ("Settlement Agreement"); (b) approves the form and method of providing notice of the proposed Settlement to the Class; (c) preliminarily certifies an opt-out class action; (d) sets a hearing date for final approval of the Settlement, plan of allocation, and Plaintiff's Counsel's application for attorneys' fees and expenses; and (e) appoints a claims administrator to administer the settlement process.

## II.    Factual and Procedural Background.

### A.    Factual Allegations

Lead Plaintiffs allege that defendants Atossa Genetics, Inc. ("Atossa" or the "Company"), and its Chairman, President and Chief Executive Officer, Steven C. Quay ("Quay"), made materially false and misleading statements to Atossa investors. Atossa is a healthcare company that developed and marketed diagnostic risk assessment products for the detection of pre-cancerous conditions that could lead to breast cancer. In essence, Lead Plaintiffs alleged that the Company claimed its products were compliant with applicable Food and Drug Administration

---

[1]    Defined terms have the same meaning as the Stipulation and Agreement of Settlement, filed concurrently herewith.

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

1

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

("FDA") regulations, when, in fact, they were not. The products at issue include the "ForeCYTE Test," which involves extracting and testing a specimen of fluid from a breast milk duct. The ForeCYTE Test worked in conjunction with Atossa's Mammary Aspirate Cytology Test ("MASCT") System, a patented breast pump (the "MASCT Device"), and a kit for the patient collection of the fluid.

Before Atossa acquired the rights to it, the FDA had cleared the MASCT System for use as a sample collection device, but it did not clear the MASCT System for the screening or diagnosis of breast cancer. Meanwhile, the FDA never cleared the ForeCYTE Test for any purpose. The FDA also never cleared the combination of the ForeCYTE Test and MASCT System for use together. But, Lead Plaintiffs alleged that Atossa nevertheless began marketing the ForeCYTE Test and MASCT System in tandem. Among other actionable statements and omissions, Lead Plaintiffs alleged that Defendants referred to the ForeCYTE Test as "FDA-cleared" and stated that it was "akin to the Pap Smear."

On September 19, 2013, the FDA told the Company it that it must recall its MASCT System and ForeCYTE Test, due to the lack of FDA approval or clearance. The Company took no immediate action, only disclosing on Friday, October 4, 2013 that it was recalling the ForeCYTE Test and the MASCT System. The October 4 recall announcement finally informed the market of the ForeCYTE Test's and MASCT System's noncompliance. The value of Atossa stock plummeted on the next trading day, dropping $2.47 per share, or more than 46 percent, to close at $2.85 per share on October 7, 2013.

### B.     Procedural Background

On October 10, 2013, Nicholas Cook ("Cook") filed a class-action lawsuit alleging that Atossa and Quay defrauded investors between November 8, 2012 and October 4, 2013. Cook named Atossa and Quay as defendants, along with certain other officers and directors, and underwriters involved in the initial public offering of Atossa's shares. He brought claims under

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

2

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

both the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act").

Multiple investors filed motions for appointment as lead plaintiff. On February 14, 2014, the Court appointed Lead Plaintiffs, and it also appointed, as co-lead counsel, the law firms of Block & Leviton LLP ("Block & Leviton") and Pomerantz LLP ("Pomerantz") (collectively, "Lead Counsel").

Lead Plaintiffs filed an Amended Complaint on April 15, 2014, again alleging violations of the 1933 Act and the Exchange Act. Atossa and Quay, along with all the other defendants, moved to dismiss. The Court granted their Motion on October 6, 2014.

Lead Plaintiffs appealed the Court's order granting defendants' their claims.   On August 18, 2017, the United States Court of Appeals for the Ninth Circuit held that Lead Plaintiffs had sufficiently alleged the falsity and materiality of certain statements made by Atossa and Quay, which Lead Plaintiffs had alleged were actionable under Sections 10(b) and 20(a), and Rule 10b-5. The Court reversed in part, affirmed in part, vacated in part and remanded.[2]

On October 16, 2017, the Parties advised the Court that Lead Plaintiffs had sent the Defendants a draft of their proposed second amended complaint, and that Defendants had informed Lead Plaintiffs that they did not intend to move to dismiss it, once filed. The Parties also advised the Court they had agreed to mediate on November 30, 2017.

Lead Plaintiffs then filed their operative Second Amended Complaint on October 19, 2017. The Second Amended Complaint alleged that (1) all Defendants made material misrepresentations and omitted from disclosure material facts necessary to make their statements not misleading, in violation of Section 10(b) and Rule 10b-5 of the Exchange Act, and (2) Quay was liable for any primary violation of the Exchange Act as an alleged control person under Section 20(a) of the

---

[2] During the pendency of the Appeal, Lead Plaintiffs assented to the dismissal of their claims against the underwriters. The Ninth Circuit's ruling eliminated any claims against officers and directors other than Quay.

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

3

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

Exchange Act. The Second Amended Complaint alleged a Class Period of December 20, 2012 to October 13, 2013. Atossa and Quay filed an Answer on December 8, 2017.

### C.      The Parties Reach an Agreement.

On November 30, 2017, counsel to the Parties met for a full day of mediation before a mediator experienced in securities class actions, Jed D. Melnick, Esq., of JAMS. The Parties engaged in arm's-length negotiations but were unable to reach an agreement that day. They continued discussions through Mr. Melnick, and on January 29, 2018, the Parties reached an agreement-in-principle to settle the Action. Following continued arms-length negotiation, the Parties have subsequently agreed to a Settlement Agreement, which fully documents the proposed Settlement.

### D.      Terms of the Proposed Settlement

The terms of the Settlement are precisely detailed in the Settlement Agreement, which fully resolves the claims of the Class against the Defendants. The essential terms are that, after diligently litigating this action, and after arm's-length negotiation, the Parties agreed to settle for a payment of $3,500,000 in cash, in exchange for customary releases. In light of the risks of further litigation, and after evaluating the factual and legal defenses available to Defendants should the case proceed, Lead Plaintiffs and Lead Counsel determined that the proposed Settlement is an excellent result for the Class.

### <u>Argument</u>

## III.     The Settlement Meets the Criteria for Preliminary Approval

The Court should approve the Settlement, memorialized in the Settlement Agreement, because it is fair, reasonable, and adequate, and because it mitigates – for all Parties – the enormous risk and expense of litigating this Action through discovery, summary judgment, trial and appeal. "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prod. Liab.*

*Litig.,* 654 F.3d 935, 946 (9th Cir. 2011). The court reviews proposed class settlements in two stages, the first of which is a preliminary fairness evaluation. *See Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*, 303 F.R.D. 337, 344 (E.D. Cal. 2014) (citing Manual For Complex Litigation (Fourth) § 21.632 (2004)). "[T]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and the date of the final fairness hearing." *Id.*

"Generally, preliminary approval of a class action settlement will be granted if it appears to fall 'within the range of possible judicial approval' and 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys.'" *Scott v. United Servs. Auto. Ass'n*, No. C11-1422-JCC, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013) (citations omitted); *accord, Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 666 (E.D. Cal. 2008). *See also Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) ("the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: '(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.'") (citation omitted).

Finally, "[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation …" *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits … which frequently present serious problems of management and expense.").

These factors all weigh in favor of preliminary approval of the Settlement.

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

5

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

1

### A.      The Proposed Settlement Is Within the Range of Judicial Approval.

2      The proposed settlement is well within the "range of possible judicial approval."

3   "To evaluate the range of possible approval criterion, which focuses on substantive fairness and

4   adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the

5   settlement offer." *Nat'l Fed'n of Blind of California v. Uber Techs., Inc.,* No. 14-CV-04086 NC,

6   2016 WL 9000699, at *8 (N.D. Cal. July 13, 2016) (citations omitted). Thus, the Court may

7   preview the factors that ultimately inform final approval: (1) the strength of plaintiff's case; (2)

8   the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

9   class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of

10  discovery completed, and the stage of the proceedings; (6) the experience and views of counsel;

11  (7) the presence of a governmental participant; and (8) the reaction of the class members to the

12  proposed settlement. *See, e.g., Id., citing Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th

13  Cir. 2004); accord *Burton v. Trinity Universal Ins. Co.,* No. CV 14-242-M-DWM, 2015 WL

14  11090362, at *3 (D. Mont. Nov. 17, 2015).

15     Here, the factors support preliminary approval. While Lead Plaintiffs have always believed

16  that their claims should prevail, they recognize that Defendants have raised numerous challenges,

17  and that they adamantly deny wrongdoing. Quite simply, Defendants could win. To prevail,

18  Plaintiffs still must prove all the elements of a Section 10(a)/Rule 10b-5 case, namely: "(1) a

19  material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between

20  the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the

21  misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv.*

22  *Partners, LLC v. Sci.Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Lead Plaintiffs would have to prove

23  these elements to the satisfaction of a jury, even though "[i]t is no secret that juries are

24  unpredictable." *State Farm Fire & Cas. Co. v. Doucette*, No. C16-5169BHS, 2016 WL 4793294,

25  at *4 (W.D. Wash. Sept. 14, 2016).

26

27

28

LEAD PLAINTIFFS' MOTION                         6                    Zwerling, Schachter & Zwerling, LLP
FOR PRELIMINARY APPROVAL                                            1904 Third Avenue, Suite 1030
OF CLASS ACTION SETTLEMENT                                         Seattle, WA 98101-1170
2:13-cv-01836 RSM                                                  Tel.: (206) 223-2053

Defendants would only need to convince the jury to find in their favor on one element. Take, for example, scienter. Lead Plaintiffs would need to prove – not merely plead – "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). But, if Defendants can convince the jury they were merely negligent when making statements about their products' regulatory status, they could prevail, and the Class would collect nothing. *See DSAM Glob. Value Fund v. Altris Software*, 288 F.3d 385, 388–89 (9th Cir. 2002) ("[S]imple, or even inexcusable negligence" is insufficient to incur liability; rather, Lead Plaintiffs must prove that Defendants intended to deceive or were at least deliberately reckless. (citation omitted)).

Further litigation, and especially the completion of fact discovery, would involve considerable costs and risk. Setting aside the risks of a trial, Defendants might have an opportunity to win on summary judgment, or the Court might deny class certification. Even after a lengthy trial, the losing party would likely appeal the decision, extending the litigation even further and jeopardizing any recovery for the Class. In contrast to these risks and challenges, the Settlement provides an immediate and certain benefit to the Class.

With respect to the amount of the Settlement, the $3.5 million settlement represents a fine outcome for the Class. Lead Plaintiffs estimate the total recoverable damages are $2.43 per damaged share, and a total of about 5.34 million shares were damaged. The $3.5 million settlement thus represents about 27% of the total estimated damages of about $13 million. This Settlement amount far exceeds the typical recovery in a securities fraud case. Indeed, one recent analysis estimates that the median securities class settlement in 2016 recovered just 2.5% of estimated damages.[3] Moreover, Cornerstone Research estimates that from 2007 to 2016, median settlements

---

[3] *See* Laarni T. Bulan, *Securities Class Action Settlements: 2016 Review and Analysis*, available at https://corpgov.law.harvard.edu/2017/04/18/securities-class-action-settlements-2016-review-and-analysis/ (visited Feb. 15, 2018).

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

7

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

as a percentage of estimated damages in securities class actions ranged between 1.8% and 2.9%.[4] Needless to say, the proposed settlement here far exceeds such thresholds. *See also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007) (approving settlement of 12% of possible damages).

Meanwhile, while there was no formal discovery (due to the PSLRA's automatic discovery stay), the Parties have vigorously litigated this Action for more than four years, and Defendants have had multiple opportunities to respond to Lead Plaintiffs' claims. Furthermore, Defendants made settlement-purposes-only proffers of evidence, including Atossa's FDA correspondence file, prior to the mediation. Thus, when the Parties negotiated, they were fully informed of the strengths and weaknesses of their claims and defenses. *See Immune Response*, 497 F. Supp. 2d at 1174 (approving settlement notwithstanding absence of formal discovery where the parties had "a clear view of the strengths and weaknesses of their cases").

Finally, all "Parties are represented by experienced counsel and their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to great deal of weight." *Id*. Lead Counsel are both nationally recognized law firms with substantial experience prosecuting securities class actions. Additionally, Defendants' Counsel, Wilson Sonsini Goodrich & Rosati, P.C., is a nationally known law firm regarded for its securities litigation practice. All the lawyers involved in this matter litigated it zealously – as evidenced by the appellate litigation – in order to achieve the best results for their clients. Their collective judgment weighs in favor of approving the Settlement.[5]

---

[4] Cornerstone Research, Securities Class Action Settlements: 2016 Review and Analysis at p. 7 (available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis) (visited Feb. 15, 2018).

[5] With regard to the remaining 'range of approval' factors, there is no governmental entity and notice has not been distributed to the Class, so these factors are not relevant at this time.

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

8

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

**B.      There Are No Obvious Deficiencies.**

There are no "grounds to doubt [the proposed Settlement's] fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *Scott*, 2013 WL 12251170, at *1.

Here the, proposed Settlement Agreement treats all segments of the Class equally.[6] Each Class member will receive a proportional share of the settlement, based upon the number of shares held. And, as far as attorneys' fees, there is no risk of "excessive compensation for attorneys" in this Settlement Agreement. To the contrary, the stipulation and notice program allows the attorneys to request up to one-third of the settlement fund for attorneys' fees. That fee award will be subject to the Court's determination. *See, e.g., Arthur v. Sallie Mae, Inc.*, No. 10-cv-00198-JLR, 2012 WL 4076119 (W.D. Wash. Sep. 17, 2012) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002) ("Factors that federal courts in the Ninth Circuit use to determine the reasonableness of fees under the percentage-of-the-fund approach include: (1) the results achieved (including results beyond the benefits of a cash fund); (2) the risk involved with the litigation; (3) the contingent nature of the fee; and (4) awards made in similar cases.").

In evaluating settlements for "obvious deficiencies," some courts also. evaluate the scope of the release. *See, e.g., Ruch v. AM Retail Grp., Inc.,* No. 14-CV-05352-MEJ, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016) (preliminarily approving settlement where "The release only covers claims that are asserted or could have been asserted based on the allegations in the operative Complaint.") (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Here, the release is narrowly tailored to apply only to claims set forth in the operative Complaint, or which otherwise related to Atossa's securities sales during the Class Period. *See* Settlement Agreement, ¶1.1(p), ¶¶ 3.1-3.8. Accordingly, there are no "obvious deficiencies" to the Settlement.

---

[6] Under the PSLRA, Lead Plaintiffs can be awarded "reasonable costs and expenses (including lost wages) directly relating to the representation of the class". 15 U.S.C. § 78u-4(a)(4). The stipulation of settlement and notice to the class allows Lead Plaintiffs to move the court for reimbursement and compensation not to exceed $5,000 per Lead Plaintiff.

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

9

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

**C.   The Proposed Settlement Is the Product of Serious Non-Collusive Negotiations.**

The proposed Settlement is the "product of serious, informed, non-collusive negotiations." *Spann*, 314 F.R.D. at 319. Where "the agreement was reached after arm's length negotiations, courts should give a presumption of fairness to the settlement." *Ramirez v. Ghilotti Bros. Inc.,* No. C 12-04590 CRB, 2014 WL 1607448, at *1 (N.D. Cal. Apr. 21, 2014).

Here, the parties began negotiating a settlement in the autumn of 2017, only after some four years of litigation before this Court and the Ninth Circuit, and after advising the Court of their intentions on October 16, 2017. They exchanged comprehensive mediation statements and mediated for a full day on November 30, 2017 with Mr. Melnick, a well-respected mediator with significant experience mediating securities fraud class actions. *See Bluetooth Headset*, 654 F.3d at 948 (participation of a mediator "is a factor weighing in favor of finding non-collusiveness"). While the Parties did not reach an agreement during the all-day mediation, arms-length negotiations continued for nearly two months, facilitated by Mr. Melnick, until the Parties reached an agreement on January 29, 2018. Accordingly, the Court should determine the Settlement is the product of serious non-collusive negotiations.

**IV.   The Court Should Conditionally Certify the Class.**

To grant preliminary approval of a proposed class settlement, a district court must also determine that the requirements for class certification under Federal Rules of Civil Procedure 23(a) and (b) are met. *See, e.g., Rinky Dink Inc v. Elec. Merch. Sys. Inc.,* No. C13-1347 JCC, 2015 WL 11234156, at *2 (W.D. Wash. Dec. 11, 2015) (citing *Churchill Village,* 361 F.3d at 575). "As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'" *In re Cooper Companies Inc. Sec. Litig.,* 254 F.R.D. 628, 632 (C.D. Cal. 2009) (quoting *Epstein v. MCA, Inc.,* 50 F.3d 644, 668 (9th Cir.1995)).

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

10

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

**A.      The Class Meets the Requirements of Rule 23(a)**

Under Rule 23(a), Lead Plaintiffs must demonstrate: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

**1.      Numerosity**

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no "no threshold number of class members that automatically satisfies this requirement … Generally, 40 or more members will satisfy the numerosity requirement." *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1326–27 (W.D. Wash. 2015) (citations omitted). Courts have held the numerosity requirement satisfied in securities cases where millions of shares are at issue, even if the precise number of class members is unknown. *See Cooper,* 254 F.R.D. at 634 ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year."); *accord HsingChing Hsu v. Puma Biotechnology, Inc.,* No. SACV150865AGJCGX, 2017 WL 6210803, at *2 (C.D. Cal. Dec. 8, 2017).

Here, Atossa stock is traded publicly on the Nasdaq stock exchange, and it is estimated that holders of approximately 5.34 million shares suffered damages. As such, joinder of all Class members is not practical.

**2.      Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Classwide resolution" "means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). The Ninth Circuit has held that, when "[c]onfronted with a class

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

11

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common-sense approach that the class is united by a common interest ... which is not defeated by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

Here, the claims will rise and fall on the question of whether Defendants made false or misleading statements, or omitted material facts, in violation of the Exchange Act and Rule 10b-5. The resolution of such issues is common to all Class members, satisfying the commonality element. *See In re Hot Topic, Inc. Sec. Litig.,* No. CV1302939SJOJCX, 2014 WL 12462472, at *4 (C.D. Cal. Nov. 3, 2014) ("[C]ommonality is easily met in cases where class members all bought or sold the same stock in reliance on the same disclosures made by the same parties,' even if damages vary." (citation omitted)). Accordingly, the commonality factor favors class certification.

### 3.    Typicality

Lead Plaintiffs' claims must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotation marks omitted). "Under the rule's permissive standards, representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, typicality is satisfied where Lead Plaintiffs alleged that they purchased Atossa shares at artificially inflated prices during the Class Period, and were damaged. *See also HsingChing*, 2017 WL 6210803 (typicality satisfied in a securities case, where all putative class members allege "similar injuries flowing from the same conduct: Defendants' alleged inflation of ... stock prices through misrepresentations and omissions ..."). Accordingly, the typicality factor favors class certification.

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

12

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

### 4.      Adequacy

The adequacy requirement is satisfied where a representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. Rule 23(a)(4). Courts in the Ninth Circuit consider two questions in evaluating this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiffs are adequate representatives of the Class. There are no conflicts between their interests and the interests of the Class. Moreover, both the Lead Plaintiffs and Lead Counsel have demonstrated their vigor by successfully pursuing this Action for more than four years, zealously appealing to the Ninth Circuit after the case was dismissed below. In short, Lead Counsel and Lead Plaintiffs stuck with the case for the benefit of the Class. Accordingly, the adequacy factor favors class certification.

### B.      The Class Merits Certification Under Rule 23(b)(3).

The Court should certify the Class under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under the predominance prong of Rule 23(b)(3), "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Under the superiority prong of Rule 23(b)(3), the Court determines "whether the objectives of the particular class action procedure will be achieved in the particular case." *Id.* at 1023.

"[C]ourts have consistently embraced the class action device as a superior method of adjudicating federal securities fraud claims." *Freedman v. Louisiana-Pac. Corp.,* 922 F. Supp.

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

13

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

377, 400 (D. Or. 1996) (citing *Basic Inc. v. Levinson,* 485 U.S. 224, 250 (1988) and *Blackie,* 524 F.2d at 903). "The Ninth Circuit has also recognized that class actions are an effective way to pursue shareholders' actions for securities fraud …" *Cooper,* 254 F.R.D. at 641–42 (citing *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913 (9th Cir.1964)).

Here, of course, common questions predominate, where numerous shareholders will all succeed or fail based upon the resolution of the same issues pertaining to Defendants' conduct. The "same nucleus of alleged misrepresentations, material omissions, and market manipulations typical of the securities class actions—and common to this class—predominate over any individual issues that separate class members in this case." *Cooper,* 254 F.R.D. at 640. Moreover, a class action is superior because "given the substantial number of possible class members and the competence and experience of counsel on both sides, the plaintiffs' claims were best adjudicated in a class action." *Id.* at 641 (citation, internal quotation marks omitted). Accordingly, the Court should certify the Class under Rule 23(b)(3).

## V.    The Notice Program is Adequate and Constitutes Due and Sufficient Notice Under Rule 23, Due Process, and the PSLRA.

Rule 23(e) requires that notice of a proposed settlement be sent to class members. Fed. R. Civ. P. 23(e). For classes certified under 23(b)(3), members must be provided with "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 214 (1950). The notice must "clearly and concisely state in plan, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

14

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

(vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

The parties have negotiated the form of notice to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort. The parties will also supplement the mailed Notice with a summary notice to be published in Investor's Business Daily, and with a website providing full information. The Notice, Claim Form, and Summary Notice are attached as Exhibits A1, A2, and A3, respectively.

The proposed "long form" Notice apprises Class Members of the nature of the litigation, the definition of the Class, the claims and issues in the Litigation, and the claims that will be released. The notice advises that a Class Member may enter an appearance through counsel if desired, describes the binding effect of a judgment, states the procedures and deadlines for Class Members to exclude themselves or object to the settlement, describes the proposed Plan of Allocation, explains the requested attorney fees and expenses; states the procedures and deadline for submitting a Proof of Claim and Release to recover; and provides the date, time, and location of the final settlement hearing.

The notice also satisfies the PSLRA's separate disclosure requirements, 15 U.S.C. § 78u-4(a)(7). It provides the amount of the settlement to be distributed in the aggregate and on an average per-share basis; information about the request for attorneys' fees and costs; identification of Lead Counsel, and reasons for the settlement.

Lead Counsel also request the Court appoint Rust Consulting ("Rust") as Claims Administrator to provide all notices approved by the Court to Class Members, to process Proofs of Claim and Release, and to administer the settlement. Rust, which has significant experience in securities class action claims administration, was selected by Lead Counsel after several qualified and experienced claims administration firms were asked to submit competitive bids and Rust submitted the lowest bid.

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

15

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

Rule 23(c)(2)(B) requires a certified class to receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." And Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The proposed notice plan in this case meets and exceeds these standards and is typical of notice plans in similar securities actions. For these reasons, the notice program should be approved by the Court.

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

16

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

## VI.    Proposed Schedule of Events.

The parties propose the following schedule of events:

| | |
|---|---|
| Date by which to mail Notice to the Class (the "Notice Date") | 60 days prior to the Settlement Hearing |
| Date by which to publish Summary Notice | 10 days after the Notice Date |
| Date by which to file papers in support of the proposed settlement, plan of allocation, and request for attorneys' fees and expenses | 35 days prior to the Settlement Hearing |
| Date by which Class Members must opt-out or object to the proposed settlement | 21 days prior to the Settlement Hearing |
| Date by which Class Members must file Proof of Claim and Release forms | 120 days following the Notice Date |
| Date of Settlement Hearing | At least 90 days after Preliminary Approval is granted |

## VII.    Conclusion

For the reasons set forth above, the proposed settlement should be preliminarily approved.

Dated: March 23, 2018

**ZWERLING, SCHACHTER & ZWERLING LLP**

/s/ Dan Drachler
Dan Drachler (WSBA #27728)
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
(206) 223-2053 phone
(206) 343-9636 fax
ddrachler@zsz.com

*Liaison Counsel for Lead Plaintiffs and the Proposed Class*

**POMERANTZ LLP**
Jeremy A. Lieberman, *pro hac vice*
Marc I. Gross, *pro hac vice*
Michael J. Wernke, *pro hac vice*
600 Third Avenue, 20th Floor

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

17

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

New York, New York 10016
(212) 661-1100 phone
(212) 661-8665 fax
jalieberman@pomlaw.com
migross@pomlaw.com
mjwernke@pomlaw.com

and

Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
(312) 377-1181 phone
(312) 377-1184 fax
pdahlstrom@pomlaw.com

**BLOCK & LEVITON LLP**
Jeffrey C. Block, *pro hac vice*
Jacob A. Walker, *pro hac vice*
155 Federal Street, Suite 400
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockesq.com
jake@blockesq.com

*Co-Lead Counsel for Lead Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2018, I filed the foregoing with the Clerk of the Court using the CM/ECF system, and served all parties via ECF.

March 23, 2018                     /s/ Dan Drachler
                                   Dan Drachler, WSBA 27728

LEAD PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
2:13-cv-01836 RSM

18

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053