The Honorable Ricardo S. Martinez

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

|  |  |
|---|---|
| *In re Atossa Genetics, Inc.*<br>*Securities Litigation* | Civil Action No. 13-cv-01836-RSM<br><br>**LEAD PLAINTIFFS' MOTION FOR**<br>**APPROVAL OF CLASS ACTION**<br>**SETTLEMENT AND PLAN OF**<br>**ALLOCATION**<br><br>Note on Motion Calendar: July 20, 2018<br><br>ORAL ARGUMENT REQUESTED |

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION -13-cv-01836 (RSM)

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

# TABLE OF CONTENTS

I.    OVERVIEW OF THE LITIGATION .................................................................................1

A.    Filing of the Amended Complaints, Defendants' Motion to Dismiss, And Lead
      Plaintiffs' Successful Appeal ......................................................................................... 2

B.    Discovery ....................................................................................................................... 3

C.    Settlement Negotiations ................................................................................................. 3

D.    Terms of the Proposed Settlement ................................................................................. 4

E.    Preliminary Approval and Notice .................................................................................. 5

II.   THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT AS FAIR,
      REASONABLE, AND ADEQUATE ...............................................................................5

A.    Standard ......................................................................................................................... 5

B.    The Settlement Is the Result of Arm's-Length Negotiations and a Mediator's
      Recommendation ............................................................................................................ 6

C.    All of the Relevant Factors Employed by Courts in this Circuit Favor Approval
      of the Proposed Settlement as Fair, Reasonable and Adequate ..................................... 7

      1.    Lead Plaintiffs' Case Is Strong, but Entails Risks................................................ 8

      2.    The Expense, Complexity, and Likely Duration of Further Litigation ................. 10

      3.    The Risk of Maintaining Class Action Status Throughout the Trial...................... 11

      4.    The Amount Offered in the Settlement ................................................................. 12

      5.    The Stage of the Proceedings ................................................................................ 13

      6.    Experienced Counsel Concur that the Settlement, which Was Negotiated in
            Good Faith and at Arm's-Length, Is Fair, Reasonable, and Adequate ................. 15

      7.    The Reaction of the Class Members to the Settlement .......................................... 17

D.    The Notice Program Satisfied Due Process and Complied with
      Fed. R. Civ. P. 23(e) ...................................................................................................... 17

      1.     The Dissemination Plan Satisfies Due Process ....................................................... 18

      2.     The Contents of the Notice Satisfy Due Process.................................................... 18

III.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION .............................19

IV.    THE CLASS SHOULD BE CERTIFIED ..........................................................................20

   A.    The Class Meets the Requirements of Rule 23(a) ........................................................ 21

   B.    The Class Meets the Requirements of Rule 23(b)(3)..................................................... 22

V.    CONCLUSION ....................................................................................................................23

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION         ii
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

# TABLE OF AUTHORITIES

**Cases**

*Aarons v. BMW of N. Am., LLC*,
　2014 WL 4090564 (C.D. Cal. Apr. 29, 2014)......................................................... 10

*In re Am. Apparel, Inc. S'holder Litig.*,
　2014 WL 10212865 (C.D. Cal. July 28, 2014) ........................................................ 9

*In re Am. Bank Note Holographics, Inc.*,
　127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................... 9

*Amchem Prods. v. Windsor*,
　521 U.S. 591 (1997) .............................................................................................. 23

*Boyd v. Bank of Am. Corp.*,
　2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ...................................................... 16

*In re Cendant Corp. Litig.*,
　264 F.3d 201 (3d Cir. 2001) .................................................................................. 13

*Charron v. Pinnacle Grp. N.Y. LLC*,
　874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................... 14

*City of Providence v. Aeropostale, Inc.*,
　2014 WL 1883494 (S.D.N.Y. May 9, 2014)............................................................ 8

*Class Plaintiffs v. City of Seattle*,
　955 F.2d 1268 (9th Cir. 1992)........................................................................... 5, 20

*Colesberry v. Ruiz Food Products, Inc.*,
　2006 WL 1875444 (E.D. Cal. June 30, 2006)....................................................... 18

*In re Cooper Companies Inc. Sec. Litig.*,
　254 F.R.D. 628 (C.D. Cal. 2009) ..................................................................... 22, 23

*In re Critical Path, Inc. Sec. Litig.*,
　2002 WL 32627559 (N.D. Cal. June 18, 2002) .................................................... 15

*DSAM Glob. Value Fund v. Altris Software*,
　288 F.3d 385 (9th Cir. 2002)................................................................................... 9

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

iii

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ........................................................................... 18

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) .......................................................... 16

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ............................................................................. 9

*Glass v. UBS Fin. Servs., Inc.*,
   2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ..................................... 15

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................... 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................... *passim*

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
   2017 WL 6210803 (C.D. Cal. Dec. 8, 2017) ..................................... 22

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................. *passim*

*In re Hot Topic, Inc. Sec. Litig.*,
   2014 WL 12462472 (C.D. Cal. Nov. 3, 2014) ................................... 22

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................... 9

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................... 5, 7, 14

*Lundell v. Dell, Inc.*,
   2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ....................................... 7

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ...................................................... 18, 19

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................... 5, 12, 14

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

iv

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 10

*In re Nissan Radiator/Transmission Cooler Litig.*,
   2013 WL 4080946 (S.D.N.Y. May 30, 2013)........................................................ 14

*Nobles v. MBNA Corp.*,
   2009 WL 1854965 (N.D. Cal. June 29, 2009) ...................................................... 11

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982).......................................................................... 6, 12

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................. 11, 12, 13, 20

*In re Pfizer Inc. Sec. Litig.*,
   2014 WL 3291230 (S.D.N.Y. July 8, 2014) ........................................................... 9

*In re Rambus Inc. Derivative Litig.*,
   2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .................................................... 14, 17

*Roberti v. OSI Sys., Inc.*,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ..................................................... 6, 14

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................................ 7

*In re Sinus Buster Prods. Consumer Litig.*,
   2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ...................................................... 14

*State Farm Fire & Cas. Co. v. Doucette*,
   2016 WL 4793294 (W.D. Wash. Sept. 14, 2016) .................................................. 8

*Stoneridge Inv. Partners, LLC v. Sci.Atlanta, Inc.*,
   552 U.S. 148 (2008) ............................................................................................ 8

*In re TD Ameritrade Account Holder Litig.*,
   2011 WL 4079226 (N.D. Cal. Sept. 13, 2011)..................................................... 14

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993).......................................................................... 10, 18

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION                     v
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010)............................................................................ 11

*Vinh Nguyen v. Radient Pharm.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................ 9

*Warner Comm. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985)........................................................................ 10


**Other Authority**

4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.53.......................... 18

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION                vi
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

Plaintiffs Miko Levi, Bandar Almosa, and Gregory Harrison ("Lead Plaintiffs"), through their undersigned counsel ("Lead Counsel"), submit this memorandum of points and authorities in support of their motion, pursuant to Federal Rule of Civil Procedure 23(e) for final approval of the class action Settlement, as set forth in the Stipulation and Agreement of Settlement, dated March 23, 2018 (the "Settlement Stipulation"). This Action has been settled for a $3.5 million cash payment. The Settlement will inure to the benefit of investors in Atossa Genetics, Inc. ("Atossa" or the "Company"). The Defendants are Atossa and Steven C. Quay (collectively, the "Defendants"). The Settlement results from Lead Plaintiffs' vigorous case prosecution and arm's-length settlement negotiations between the Parties.

## I.   OVERVIEW OF THE LITIGATION[1]

On October 10, 2013, Nicholas Cook ("Cook") filed a class-action lawsuit alleging that Atossa and Quay defrauded investors between November 8, 2012 and October 4, 2013. Cook named Atossa and Quay as defendants, along with certain other officers and directors, and underwriters involved in the initial public offering of Atossa's shares. He brought claims under both the Securities Act of 1933 ("1933 Act") and the Securities Exchange Act of 1934 ("Exchange Act").

Multiple investors filed lead plaintiff motions. On February 14, 2014, the Court appointed Lead Plaintiffs, and it also appointed, as co-lead counsel, the law firms of Block & Leviton LLP ("Block & Leviton") and Pomerantz LLP ("Pomerantz") (collectively, "Lead Counsel").

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation. ECF No. 90-1.

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

1

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

A.     **Filing of the Amended Complaints, Defendants' Motion to Dismiss, And Lead Plaintiffs' Successful Appeal**

Lead Plaintiffs filed an Amended Complaint on April 15, 2014, again alleging violations of the 1933 Act and the Exchange Act. Atossa and Quay, along with all the other defendants, moved to dismiss. The Court granted their Motion on October 6, 2014.

Lead Plaintiffs appealed the allowance of the motions to dismiss their claims under Sections 10(b) and (as to Quay) 20(a) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (the "Exchange Act").

On August 18, 2017, the United States Court of Appeals for the Ninth Circuit held that Lead Plaintiffs had sufficiently alleged the falsity and materiality of certain statements made by Atossa and Quay, which Lead Plaintiffs had alleged were actionable under Sections 10(b) and 20(a), and Rule 10b-5. The Court reversed in part, affirmed in part, vacated in part and remanded.[2]

On September 29, 2017 the Parties held a telephonic status conference with the Court to discuss the resumption of the litigation. On October 16, 2017, the Parties advised the Court that the Lead Plaintiffs had sent the Defendants a draft of their Proposed Amended Complaint, and that Defendants had informed Lead Plaintiffs that they did not intend to move to dismiss it, once filed. The Parties also advised the Court they had agreed to mediate on November 30, 2017.

Lead Plaintiffs then filed their operative Second Amended Complaint on October 19, 2017. The Second Amended Complaint alleged that (1) all Defendants made material

---

[2] During the pendency of the Appeal, the Lead Plaintiffs assented to the dismissal of their claims against the underwriters. The Ninth Circuit's ruling eliminated any claims against officers and directors other than Quay.

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

2

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

1   misrepresentations and omitted from disclosure material facts necessary to make their

2   statements not misleading, in violation of Section 10(b) and Rule 10b-5 of the Exchange Act,

3   and (2) Quay was liable for any primary violation of the Exchange Act as an alleged control

4   person under Section 20(a) of the Exchange Act. The Second Amended Complaint alleged a

5   Class Period of December 20, 2012 to October 13, 2013. Atossa and Quay filed an Answer on

6   December 8, 2017.

7   **B.**   **Discovery**

8   Following Lead Plaintiffs' successful appeal to the Ninth Circuit, and upon remand to

9   this Court, the automatic stay of discovery pursuant to the PSLRA was lifted.  In the following

10  weeks, the Parties negotiated a proposed pretrial schedule. The Parties held their Rule 26(f)

11  conference on November 3, 2017 and filed their Joint Status Report with the Court on

12  November 10, 2017.

13  On December 1, 2017, Lead Plaintiffs served their first set of document requests on

14  Defendants, consisting of a total of 51 requests for production. Joint Decl. ¶ 31. Defendants

15  served their responses and objections on January 19, 2018. *Id.*

16  Prior to mediation, Defendants produced all of Atossa's relevant communications with

17  the FDA. *Id.* ¶ 32. Lead Plaintiffs also issued FOIA requests to the FDA, pursuant to which the

18  FDA produced documents. *Id.* Plaintiffs' Counsel have devoted substantial time to reviewing

19  and analyzing these documents. *Id.*

20  **C.**   **Settlement Negotiations**

21  On November 30, 2017, the Parties attended a full day in-person mediation overseen by

22  Jed Melnick, Esq., a highly-regarded mediator with JAMS, one of the nation's preeminent

23

24

25  LEAD PLAINTIFFS' MOTION FOR              Zwerling, Schachter & Zwerling, LLP
    APPROVAL OF CLASS ACTION                 1904 Third Avenue, Suite 1030
26  SETTLEMENT AND PLAN                       Seattle, WA 98101-1170
    OF ALLOCATION - 13-cv-01836 (RSM)        Tel.: (206) 223-2053

27

28

3

1  mediation firms. *Id.* ¶¶ 38-42. The mediation was attended by Plaintiffs' Counsel, counsel for

2  Defendants and certain of the Company's insurance carriers. *Id.*

3      Plaintiffs' Counsel prepared detailed mediation statements with a supporting record of

4  30 joint exhibits. *Id.* In advance of the mediation session, the Parties exchanged and submitted

5  their mediation statements and case-related materials to Mr. Melnick. *Id.* The Parties also

6  exchanged and submitted reply briefs to Mr. Melnick before the in-person settlement

7  discussions. *Id.*

8      Over the course of the session, Mr. Melnick engaged in extensive discussions with

9  counsel and the carriers in an effort to find common ground between the Parties' respective

10  positions. *Id.* While the session was productive, it did not result in a resolution. *Id.*

11      The Parties continued their discussions with the mediator's assistance over the course of

12  the next several months as discovery in the action continued. *Id.* ¶ 42. With the Parties at an

13  impasse, on January 26, 2018, Mr. Melnick proposed a Mediator's Recommendation, which the

14  Parties accepted on January 29, 2018. *Id.* The Parties signed an MOU on February 2, 2018. *Id.*

15  The Settlement Agreement was signed on March 23, 2018.

16      **D.    Terms of the Proposed Settlement**

17      The terms of the Settlement are precisely detailed in the Settlement Agreement, which

18  fully resolves the claims of the Class against the Defendants. The essential terms are that, after

19  diligently litigating this action, and after arm's-length negotiation, the Parties agreed to settle

20  for a payment of $3,500,000 in cash, in exchange for customary releases. In light of the risks of

21  further litigation, and after evaluating the factual and legal defenses available to Defendants

22  should the case proceed, Lead Plaintiffs and Lead Counsel determined that the proposed

23  settlement is an excellent result for the Class.

24

25  LEAD PLAINTIFFS' MOTION FOR                          Zwerling, Schachter & Zwerling, LLP
    APPROVAL OF CLASS ACTION                    4        1904 Third Avenue, Suite 1030
26  SETTLEMENT AND PLAN                                   Seattle, WA 98101-1170
    OF ALLOCATION - 13-cv-01836 (RSM)                    Tel.: (206) 223-2053
27

28

1

2

**E.      Preliminary Approval and Notice**

On April 13, 2018, the Court preliminarily approved the Settlement permitting the notice process to begin. To date, 5,041 Notices and Proof of Claim have been sent by first-class mail to potential Class Members, and a Summary Notice has been timely published in *Investor's Business Daily*. *See* Rust Decl., ¶¶ 11, 12. Copies of the Notice and Proof of Claim were posted in downloadable form on a website specific to the Settlement, www.AtossaGeneticsSecuritiesLitigation.com. *Id.* ¶ 13. The deadline to object to any aspect of the Settlement and to request exclusion is June 29, 2018. To date, there have been no objections and no requests for exclusion. *Id.* ¶¶ 19-20.

## II.      THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE

### A.      Standard

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Thus, in assessing the Settlement under Rule 23(e), the Court must only intrude upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit to the extent necessary to reach a reasoned judgment that (a) the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that (b) the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

There is no prescribed settlement approval procedure to be followed in this Circuit. Rather, "the decision to approve or reject a settlement is committed to the sound discretion of

| | |
|---|---|
| LEAD PLAINTIFFS' MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION - 13-cv-01836 (RSM) | Zwerling, Schachter & Zwerling, LLP 1904 Third Avenue, Suite 1030 Seattle, WA 98101-1170 Tel.: (206) 223-2053 |

5

1  the trial judge because [the trial judge] is exposed to the litigants, and their strategies, positions

2  and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). To avoid excessive

3  intrusion into the parties' compromise, the court considers the settlement taken as a whole,

4  rather than its individual component parts, and examines it for overall fairness. *Officers for*

5  *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). Consequently, a settlement

6  hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the

7  proposed settlement "be judged against a hypothetical or speculative measure of what might

8  have been achieved by the negotiators." *Id.* at 625. Rather, "[t]he involvement of experienced

9  class action counsel and the fact that the settlement agreement was reached in arm's length

10  negotiations, after relevant discovery had taken place create a presumption that the agreement is

11  fair." *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) (*quoting*

12  *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997)).

13       As explained below, the Settlement was reached after extensive investigation and

14  litigation by experienced counsel on both sides, and then only after protracted arms-length

15  negotiations. Under these circumstances, the Settlement has the presumption of fairness.

16   **B.     The Settlement Is the Result of Arm's-Length Negotiations**
17   **and a Mediator's Recommendation**

18       The Parties' negotiations were thorough and the Settlement reached without collusion

19  after good-faith bargaining among the Parties and Defendants' insurance carriers, including the

20  acceptance of an informed double-blind Mediator's Recommendation. As detailed in the

21  Mediator Declaration, Class Counsel, Defendants' counsel, and the insurance carriers

22  participated in a full-day mediation with Mr. Melnick on November 30, 2017. Before the

23  mediation, the Parties submitted to Mr. Melnick detailed mediation statements and exhibits that

24

25   LEAD PLAINTIFFS' MOTION FOR                          Zwerling, Schachter & Zwerling, LLP
     APPROVAL OF CLASS ACTION              6              1904 Third Avenue, Suite 1030
26   SETTLEMENT AND PLAN                                  Seattle, WA 98101-1170
     OF ALLOCATION - 13-cv-01836 (RSM)                   Tel.: (206) 223-2053
27

28

1
2
addressed both liability and damage issues. The session ended without any agreement being reached.

3
4
5
6
7
Over the course of the next couple months, Mr. Melnick conducted further negotiations with the Parties and the carriers, which culminated in an agreement in principle to settle the Action following a Mediator's Recommendation. The Mediator's Recommendation was based on Mr. Melnick's review and understanding of the mediation statements and filings in the Action, the mediation session, her separate conversations with each Party.

8
9
10
11
12
13
As courts within this Circuit and nationwide have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is noncollusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see Lundell v. Dell, Inc.*, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case"). The arm's-length nature of the negotiations supports final approval of the Settlement.

14
15
16
### C. All of the Relevant Factors Employed by Courts in this Circuit Favor Approval of the Proposed Settlement as Fair, Reasonable and Adequate

17
18
19
20
21
22
23
To determine whether a proposed settlement is fair, reasonable, and adequate, a court must examine the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the risk of maintaining class status through trial; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Linney*, 151 F.3d at 1242. These factors all support approval of the proposed Settlement.

24
25
26
27
28

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

7

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

### 1.    Lead Plaintiffs' Case Is Strong, but Entails Risks

While Lead Plaintiffs and Lead Plaintiffs' Counsel believe that they could ultimately prevail against Defendants, they recognize that numerous risks and uncertainties would accompany further litigation of the Class's claims. "[S]ecurities class actions are notably difficult and notoriously uncertain to litigate." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (internal quotations omitted); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."). Even for cases that survive a motion to dismiss, a positive result is far from guaranteed. Often, discovery will not provide clear trial evidence. Cases that reach summary judgment are often undercut by a ruling. For those cases that make it to trial (in whole or in part), it is always a challenge and never a guarantee to succeed in establishing liability. For the reasons stated below, this case likely would have been no different.

While Lead Plaintiffs have always believed that their claims should succeed, they recognize that Defendants have raised numerous challenges, and that they adamantly deny wrongdoing. Quite simply, Defendants could win. To prevail, Plaintiffs still must prove all the elements of a Section 10(a)/Rule 10b-5 case, namely: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Lead Plaintiffs would have to prove these elements to the satisfaction of a jury, even though "[i]t is no secret that juries are unpredictable." *State Farm Fire & Cas. Co. v. Doucette*, 2016 WL 4793294, at *4 (W.D. Wash. Sept. 14, 2016).

Defendants would only need to convince the jury to find in their favor on one element. Take, for example, scienter. Lead Plaintiffs would need to prove – not merely plead – "a mental

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

8

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). But, if Defendants can convince the jury they were merely negligent when making statements about their products' regulatory status, they could prevail, and the Class would collect nothing. *See DSAM Glob. Value Fund v. Altris Software*, 288 F.3d 385, 388–89 (9th Cir. 2002) ("[S]imple, or even inexcusable negligence" is insufficient to incur liability; rather, Lead Plaintiffs must prove that Defendants intended to deceive or were at least deliberately reckless.) (citation omitted). Scienter is regarded as the most difficult element to prove in a securities fraud claim. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Although Lead Plaintiffs and Lead Plaintiffs' counsel believe that the Defendants knowingly made false statements, satisfying Lead Plaintiffs' burden of proof would, as in any case, be a challenge. *Vinh Nguyen v. Radient Pharm.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) ("any claim requiring proof of an intentional mental state presents challenges."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("The Court also recognized that the issues of scienter and causation are complex and difficult to establish at trial" and, as a result, "concludes that the settlement is a prudent course.").

Lead Plaintiffs would also have had to prove loss causation and damages – that the revelation of the fraud caused the price of Atossa's stock to fall. These elements can only be proved through expensive, complex, and risky expert testimony. *See, e.g. In re Pfizer Inc. Sec. Litig.*, 2014 WL 3291230, at *3 (S.D.N.Y. July 8, 2014) (entering summary judgment in favor of defendants after excluding Plaintiffs' experts on damages pursuant to Daubert); *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *9 (C.D. Cal. July 28, 2014) (noting that plaintiffs must turn to experts to disaggregate losses from nonactionable and actionable factors).

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

9

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.

*In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985); *see also Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *10 (C.D. Cal. Apr. 29, 2014) ("battle of the experts" are "inherently risky").

Had any of Defendants' arguments been accepted in whole or part, they could have eliminated or, at a minimum, dramatically limited any potential recovery for the Class. Further, Lead Plaintiffs would have had to prevail at several stages –summary judgment, trial – and if it prevailed on those on the appeals that were likely to follow. The Settlement avoids these litigation risks and guarantees the Class a favorable and immediate cash recovery of $3.5 million.

### 2. The Expense, Complexity, and Likely Duration of Further Litigation

 Courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See, e.g., Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375-76 (9th Cir. 1993). Thus, a court "shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expense litigation." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

It is well-known that class action litigation is inherently complex. *See, e.g., Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). Securities class

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

10

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

actions, in particular, are typically complex and expensive to prosecute. *See, e.g., Heritage*, 2005 WL 1594403, at *6. This Action is no exception. If taken to trial, this Action would have expended substantial party and judicial resources. The Action would have required additional extensive document, deposition and expert discovery, requiring much additional time by the Parties (and likely the Court to resolve disputes), and at great additional expense. Substantial time and expense would also be expended in further motion practice, including at the class certification stage, summary judgment stage, and preparing the case for trial. The trial itself would be time-consuming, expensive, and uncertain – and no matter the outcome, appeals would be likely. Even if Lead Plaintiffs prevailed through motion practice, and ultimately won at trial and on appeal, the appeals process could span several years, during which the Class would receive nothing.

In contrast, the Settlement results in an immediate and substantial tangible recovery for the Class, without the risk, expense, and delay of further litigation. *See Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 489 (E.D. Cal. 2010) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (internal citations omitted). This factor likewise favors approval.

### 3. The Risk of Maintaining Class Action Status Throughout the Trial

A pending class certification motion may justify approval of a final settlement where, as here, the motion "may be outcome-determinative in itself[.]" *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008). When the Settlement was reached, Lead Plaintiffs' class certification motion was pending before the Court. The Settlement avoids the uncertainty with respect to certification and, thus, supports approval of the Settlement. *See id.* at 1041-42 ("If

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

11

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

1    the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose

2    their chance at recovery entirely . . . . As Defendants agree to the class certification for the

3    purposes of the Settlement, there is much less risk of anyone who may have actually been injured

4    going away empty-handed.").

5                    **4.    The Amount Offered in the Settlement**

6            The determination of a "reasonable" settlement is not susceptible to a mathematical

7    equation yielding a particularized sum. Nor is the proposed settlement "to be judged against a

8    hypothetical or speculative measure of what might have been achieved by the negotiators."

9    *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[] the

10   question we address is not whether the final product could be prettier, smarter or snazzier, but

11   whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In fact, a

12   settlement may be acceptable even if it amounts to only a fraction of the potential recovery that

13   might be available at trial. *See in re Mego Fin.*, 213 F.3d at 459.

14           Here, the Settlement provides for the recovery of $3.5 million in cash. The Settlement

15   was the direct consequence of Mr. Melnick's informed Mediator's Recommendation, and was

16   reached only after Lead Plaintiffs' Counsel had conducted an extensive investigation, consulted

17   with experts, overcame Defendants' motion to dismiss, pursued discovery, and engaged in

18   substantial negotiations. The recovery provides an immediate and tangible benefit to the Class,

19   and is well within a range of reasonableness in light of the best possible recovery and the

20   substantial risks presented by the litigation.

21           Lead Plaintiffs' Counsel engaged a consultant to estimate the potentially recoverable

22   damages. Estimating aggregate damages can be challenging due to, among other things,

23   assumptions that must be made regarding trading activity. A popular model used to estimate

24   damages is referred to as the "Two-Trader Model" (also called the "80/20 Model"). The Two-

25   LEAD PLAINTIFFS' MOTION FOR                                    Zwerling, Schachter & Zwerling, LLP
     APPROVAL OF CLASS ACTION                    12              1904 Third Avenue, Suite 1030
26   SETTLEMENT AND PLAN                                           Seattle, WA 98101-1170
     OF ALLOCATION - 13-cv-01836 (RSM)                            Tel.: (206) 223-2053

27

28

1   Trader model is the model often used by Cornerstone Research, a damages firm routinely hired

2   by Defendants in securities actions. Here, such an estimate of potential maximum recoverable

3   damages, assuming Lead Plaintiffs wholly prevailed and overcame all defenses was at most

4   approximately $13 million. But that number would be reduced or eliminated entirely if the

5   Court or jury accepted some or all of Defendants' defenses, including their claim their claim

6   that the majority of the losses are attributable to causes other than the alleged misstatements or

7   omissions, or that certain statements are not actionable.  Joint Decl. ¶¶ 35-36.

8     Even before accounting for Defendants' arguments, the Settlement of $3.5 million

9   constitutes a recovery of almost 20% of the maximum recoverable damages, which is

10   significantly higher than the 7.3% median settlement recovery as a percentage of estimated

11   damages in securities class actions in 2016 where estimated damages were less than $50

12   million. *See* Cornerstone Research, "Securities Class Action Settlements: 2016 Review and

13   Analysis," at p. 8, Figure 7, *available at* https://www.cornerstone.com/Publications/

14   Reports/Securities-Class-Action-Filings-2016-YIR.  Thus, the result achieved by Class Counsel

15   is excellent.  *See, Omnivision*, 559 F. Supp. 2d at 1042 ($13.75 million settlement yielding 6%

16   of potential damages was "higher than the median percentage of investor losses recovered in

17   recent shareholder class action settlements"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d

18   Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses).

  **5.**   **The Stage of the Proceedings**

19     The stage of the proceedings and the amount of information available to the parties to

20   assess the strengths and weaknesses of their case are additional factors that courts consider in

21   determining the fairness, reasonableness, and adequacy of a settlement. *See Mego Fin.*, 213 F.3d

22   at 459; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009).

23   The parties need not have engaged in extensive formal discovery as long as they have engaged in

24

25   LEAD PLAINTIFFS' MOTION FOR         Zwerling, Schachter & Zwerling, LLP

26   APPROVAL OF CLASS ACTION     13       1904 Third Avenue, Suite 1030
      SETTLEMENT AND PLAN             Seattle, WA 98101-1170
      OF ALLOCATION - 13-cv-01836 (RSM)      Tel.: (206) 223-2053

27

28

sufficient investigation of the facts to enable the parties and the Court to intelligently make an appraisal of the Settlement.[3]

Here, before entering into the Settlement, Lead Counsel thoroughly evaluated the strengths and weaknesses of Lead Plaintiffs' claims. As set forth in greater detail in the Joint Declaration, Lead Counsel extensively developed the record. Among other things, they: (a) thoroughly reviewed and analyzed thousands of pages of publicly-available information and documents regarding Atossa including, but not limited to, its United States Securities and Exchange Commission filings, financial statements, press releases, conference call transcripts, analysts' reports, and media coverage; (b) drafted and filed a comprehensive complaint that would satisfy the heightened pleading standards of the PSLRA, which was amended as additional information concerning the alleged fraud was discovered; (c) conducted extensive research of the applicable law for claims in this Action and the potential defenses thereto; (e) successfully opposed Defendants' motions to dismiss on appeal; (f) reviewed Atossa's relevant communications with the FDA produced in discovery; (g) consulted with a damages expert; and

---

[3] *See, e.g., In re Mego Fin.*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney*, 151 F.3d at 1239; *In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *see also In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *19 (E.D.N.Y. Nov. 10, 2014) (quoting *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006)); *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (finding the factor to weigh in favor of approval where "[a]lthough the parties have not engaged in extensive discovery . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement"); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) (finding this factor to weigh in favor of approval where "Class Counsel undertook a comprehensive pre-suit investigation lasting over a year" and "Class Counsel and Defendants engaged in certification discovery involving the exchange of documents and several depositions"); *Roberti*, 2015 WL 8329916, at *5 (similar stage of proceedings weighs in favor of final approval).

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

14

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

(h) researching, preparing and drafting comprehensive briefs for mediation and reviewing and analyzing Defendants' mediation brief. Joint Decl. ¶¶ 15-42.

Plaintiff and Plaintiffs' Counsel were in an excellent position to evaluate the strengths of their allegations against Defendants as well as the Mediator's Recommendation to settle the Action for $3.5 million before additional time and resources were expended on further litigation. Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the Class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc. Sec. Litig.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). For this reason, courts have commended class counsel for recognizing when, as in this case, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 Fed. Appx. 452, 457 (9th Cir. 2009).

In sum, the parties reached a settlement when they were well informed as to the facts, legal issues, and risks of the Action.

### 6. Experienced Counsel Concur that the Settlement, which Was Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable, and Adequate

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); accord *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *6 (C.D. Cal. Nov. 18, 2014). And "a presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Heritage*, 2005 WL 1594403, at *9 (citing *Manual for Complex Litigation* (Third) § 30.42 (1995) (internal quotations omitted)).

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

15

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This case has been litigated by experienced and well-respected counsel on both sides. Defendants' counsel, Wilson Sonsini Goodrich & Rosati is a highly-respected law firm that is widely recognized as having one of the nation's leading litigation practices. Joint Decl. ¶ 86. Lead Counsel has substantial securities litigation experience, having prosecuted and resolved dozens of complex securities cases, including some of the largest cash recoveries in securities class action history. *See, e.g. In re Comverse Tech., Inc. Sec. Litig.*, 06-cv-1825 (E.D.N.Y. June 24, 2010) ($225 million settlement).   Plaintiffs' Counsel are intimately familiar with the strengths and weaknesses of the case and the core facts, and wholeheartedly recommend this Settlement as fair, reasonable, and adequate.

Further, the Settlement was overseen by a highly respected mediator; Jed Melnick, Esq. of JAMS, one of the nation's preeminent mediation firms. The Parties engaged in hard-fought negotiations over the course of a full-day in-person mediation session and held further discussions through Mr. Melnick telephonically. The negotiations were in good faith and at arm's-length. Though professional, the discussions were zealous, and even heated; there was no collusion. Indeed, the Parties were at an impasse prior to Mr. Melnick proposing a Mediator's Recommendation, which resulted in the Settlement. Joint Decl. ¶ 42. As a result of these long and hard-fought negotiations the parties agreed to the settle this Action for $3.5 million. Only after these protracted and good faith negotiations did the parties finally agree to all the terms of the settlement reflected in the Stipulation.   *Id*. Mr. Melnick explains: "From my involvement as the mediator for the case, I observed first-hand that this was an extremely hard-fought, arm's length negotiation resulting in a significant recovery for the Settlement Class and an equitable result for all involved. The advocacy on all sides was outstanding." *See* Declaration of Jed Melnick ("Melnick Decl." or "Mediator Decl."), attached as Exhibit 2 to the Joint Decl., at ¶ 8:

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

16

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

1
2
3
4

> Although clearly an issue for the Court to decide, in my view, based on my knowledge of this matter, all of the material provided to me, the extensive efforts of skillful advocacy and arm's-length bargaining of counsel, the litigation risks, and the benefits reached in the proposed Settlement, I believe that the Settlement is fair, reasonable, and adequate, and I respectfully recommend that it be approved by the Court.

*Id.* ¶ 9.

Lead Counsel recommends that the Court approve the Settlement because it is fair, reasonable, and adequate, and in the best interests of the Class.

### 7.  The Reaction of the Class Members to the Settlement

The reaction of the Class to the Settlement is another factor in determining the adequacy of the Settlement. *See In re Rambus*, 2009 WL 166689, at *3 (citation omitted). Pursuant to the Court's Preliminary Approval Order, ECF No. 90, Notices were sent to Class Members to date and Summary Notice was published in *Investors' Business Daily* on April 23, 2018. Rust Decl. ¶ 12. The deadline to object to, or exclude oneself from the settlement is June 29, 2018. *Id.* ¶¶ 19-20. To date, no objections have been received to the Settlement, Plan of Allocation, or any other aspect of the Settlement, and there has been no request for exclusion from the Settlement. *Id.* "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness" *Hanlon,* 150 F.3d at 1027.

### D.  The Notice Program Satisfied Due Process and Complied with Fed. R. Civ. P. 23(e)

Due process requires that the class members be given notice of a proposed settlement and their right to be heard at the fairness hearing. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. Rather, to

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

17

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

satisfy due process and comply with Fed. R. Civ. P. 23(e), notice for the approval of a class settlement by class members must only fairly apprise them of the subject matter of the suit, the proposed terms of the settlement, and the members' opportunity to be heard. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977); *see also Torrisi*, 8 F.3d at 1374-75. Notice is "adequate if it may be understood by the average class member." 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.53 at 167.

### 1.    The Dissemination Plan Satisfies Due Process

There is no statutory or due process requirement that all class members receive actual notice by mail or other means. Rather, "individual notices must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Products, Inc.*, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981)).  Here the notice was disseminated via individual mailing of 5,041 printed notices and published over a national business internet newswire. Rust Decl. ¶¶ 11-12. This notice satisfies the due process requirement.

### 2.    The Contents of the Notice Satisfy Due Process

The Ninth Circuit provides that proper notice should provide: (1) the material terms of the proposed settlement; (2) disclosure of any special benefit to the class representatives; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final approval hearing and the method for objecting to the settlement; (5) an explanation regarding the procedures for allocating and distributing the settlement funds; and (6) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall*, 550 F.2d at 1178.

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

18

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

Here, the Court-approved Notice provided all of the required information: a description of the $3.5 million Gross Settlement Fund; Lead Counsel's intent to apply for a fee award in an amount not to exceed 33% of the Gross Settlement Fund for settlement of the class claims and an amount not to exceed $75,000 for reimbursement of expenses; the request for an award to Lead Plaintiffs in an amount not to exceed $5,000 each; and the contact information for Lead Counsel and the Claims Administrator, including how to make inquiries to both. Rust Decl. Ex. A. The Notice also included the date, time, and place of the fairness hearing, described how to object, and informed Class Members that any objection must be postmarked or received by the Court no later than June 29, 2018, and any proof of claim form must be postmarked no later than August 20, 2018. *Id.* The Notice also identified the Settlement website where the Notice and Proof of Claim could be downloaded. *Id.* The Court-approved Notice provided additional details regarding the Plan of Allocation of the Net Settlement Fund, and adequately informed Class Members of the impact of the Settlement, including release of claims against the Released Persons for any Class Members who do not opt out. *Id.*

In sum, broad dissemination of the Court-approved Notice and Summary Notice satisfied every conceivable requirement of due process. Accordingly, the Settlement should be granted final approval.

## III.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 WL 1594403, at *11. Assessment of the adequacy of a plan of allocation in a class action is governed by the same standards of review applicable to the settlement as a whole – the plan needs to be "fair, reasonable and adequate." *See Omnivision*, 559 F. Supp. 2d at 1045; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir.

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION                    19
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

1992). "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).

Here, the proposed Plan of Allocation herein was fully described in the Notice provided to the Class, at pages 6-7. Rust Decl., Ex. A. It was formulated by Lead Counsel based on Plaintiffs' damages expert's estimates of inflation in Atossa shares, with the goal of reimbursing Class Members in a fair and reasonable manner. The proposed Plan of Allocation distributes the settlement proceeds on a *pro rata* basis, calculating a Claimant's relative loss proximately caused by Defendants' alleged false and misleading statements and material omissions, by allocating a Recognized Loss of $2.47 per share of Atossa common stock purchased during the class period (*i.e.,* after one or more allegedly false or misleading statements were made that kept Atossa shares artificially inflated) and held as of the close of trading on October 4, 2013 (*i.e.,* when the falsity of those statements came to light and caused the share price of Atossa stock to fall).

In response to at least 5,041 Notices sent, there have been no objections and no exclusion requests from a potential Class Member, further supporting its approval. Rust Decl. ¶¶ 19-20. In short, the Plan of Allocation has a rational basis and fairly compensates Class Members, and this Court should approve it.

## IV.    THE CLASS SHOULD BE CERTIFIED

In the Court's Order dated April 13, 2018, the Court conditionally certified the Class consisting of:

> Any and all persons or entities who purchased or otherwise acquired shares of Atossa common stock during the period from December 20, 2012 and October 4, 2013, both dates inclusive, including their respective successors, predecessors,

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

20

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

trustees, executors, administrators, assigns, and transferees. Excluded from the Class are: Individuals named as defendants in the Action at the time of settlement, Atossa's current and former directors and officers and their immediate family members, including their legal representatives, heirs, successors, or assigns, and any entity in which a Defendant has or had a controlling interest. Also excluded from the Class is any person or entity who excludes themselves by filing a timely Request for Exclusion.

ECF No. 91 at 2. As described in detail in Plaintiffs' memorandum in support of preliminary approval of the settlement, ECF No. 90 at 10-14, certification of the Class under Rule 23 of the Federal Rules of Civil Procedure is appropriate.

### A.   The Class Meets the Requirements of Rule 23(a)

In order for a class to be certified, it must meet the following requirements: (a) numerosity; (b) commonality; (c) typicality; and (d) adequacy of representation. *Hanlon*, 150 F.3d at 1019. As detailed in Plaintiffs' memorandum in support of preliminary approval, the Class meets all the requirements of Rule 23(a).

First, as to numerosity, the Class is sufficiently numerous given that the Company had million shares of common stock outstanding during the Class Period. Given this number of shares, it is safe to assume that there are several thousands, if not millions, potential Class Members who purchased during the Class Period. *See In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year.").

Second, all of the conduct alleged in the complaint was common to all Class Members. All of the Class Members purchased common shares of Atossa during the Class Period. Therefore, all of the Settling Defendants' alleged misrepresentations were made to each of the Class Members. *See In re Hot Topic, Inc. Sec. Litig.*, 2014 WL 12462472, at *4 (C.D. Cal. Nov.

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

21

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

3, 2014) ("[C]ommonality is easily met in cases where class members all bought or sold the same stock in reliance on the same disclosures made by the same parties,' even if damages vary." (citation omitted)).

Third, all of the Class Members' claims are interrelated, and Lead Plaintiffs' claims are typical of those of the rest of the Class. All Class Members suffered losses by virtue of the alleged corrective disclosures. *HsingChing Hsu v. Puma Biotechnology, Inc.,* 2017 WL 6210803, at *2 (C.D. Cal. Dec. 8, 2017) (typicality satisfied in a securities case, where all putative class members allege "similar injuries flowing from the same conduct: Defendants' alleged inflation of … stock prices through misrepresentations and omissions …").

Fourth, Lead Plaintiffs are adequate representatives of the Class. They have no conflicts with the other Class Members, and have retained counsel with vast experience in the prosecution of securities class actions. Lead Plaintiffs have been actively involved in the case from its inception, maintaining communication with Lead Counsel. Due to Lead Plaintiffs' diligence and retention of experienced counsel, their representation is adequate. *See Hanlon*, 150 F.3d at 1020.

## B.      The Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification where, in addition to the requirements of Rule 23(a), common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 607 (1997). This standard, as in most securities class actions, is easily met here. The root of the class action—whether Defendants' publicly disseminated releases and statements omitted and/or misrepresented material facts—is the central issue and predominates over any theoretical individual issue that may arise. *See In re Cooper,* 254 F.R.D. at 640.

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

22

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

1    Additionally, the class action mechanism is the best method of resolving this suit. Since the

2    controversy for each class member is identical, adjudicating in one suit and one forum is the

3    most economical means of resolving this matter. *Id.* at 641. Moreover, some of the Class

4    Members' damages are too small to make it feasible to incur substantial litigation costs that

5    would exceed any potential recovery.

6    **V.     CONCLUSION**

7         Lead Plaintiffs respectfully requests that the Court grant final approval of the proposed

8    Settlement and the proposed Plan of Allocation.

9

10                                               Respectfully Submitted,

11   Dated: June 22, 2018                         **ZWERLING, SCHACHTER &**
                                                   **ZWERLING** LLP

12
                                                   */s/ Dan Drachler*
13                                                 Dan Drachler (WSBA #27728)
                                                   1904 Third Avenue, Suite 1030
14                                                 Seattle, WA 98101-1170
                                                   (206) 223-2053 phone
15                                                 (206) 343-9636 fax
                                                   ddrachler@zsz.com
16

17                                                 *Liaison Counsel for Lead Plaintiffs*

18                                                 **POMERANTZ LLP**
                                                   Jeremy A. Lieberman, *pro hac vice*
19                                                 Marc I. Gross, *pro hac vice*
                                                   Michael J. Wernke, *pro hac vice*
20                                                 600 Third Avenue, 20th Floor
                                                   New York, New York 10016
21                                                 (212) 661-1100 phone
                                                   (212) 661-8665 fax
22                                                 jalieberman@pomlaw.com
                                                   migross@pomlaw.com
23                                                 mjwernke@pomlaw.com

24

25   LEAD PLAINTIFFS' MOTION FOR                              Zwerling, Schachter & Zwerling, LLP
     APPROVAL OF CLASS ACTION            23                   1904 Third Avenue, Suite 1030
26   SETTLEMENT AND PLAN                                      Seattle, WA 98101-1170
     OF ALLOCATION - 13-cv-01836 (RSM)                       Tel.: (206) 223-2053
27

28

and

Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
(312) 377-1181 phone
(312) 377-1184 fax
pdahlstrom@pomlaw.com

**BLOCK & LEVITON LLP**
Jeffrey C. Block, *pro hac vice*
Jacob A. Walker, *pro hac vice*
155 Federal Street, Suite 400
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockesq.com
jake@blockesq.com

*Co-Lead Counsel for Lead Plaintiffs and the Class*

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN
OF ALLOCATION - 13-cv-01836 (RSM)

24

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053