The Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| *In re Atossa Genetics, Inc. Securities Litigation* | Civil Action No. 13-cv-01836-RSM<br><br>**LEAD PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES**<br><br>Note on Motion Calendar: July 20, 2018<br><br>ORAL ARGUMENT REQUESTED |

LEAD PLAINTIFFS' MOTION FOR
APPROVAL OF ATTORNEYS'
FEES AND EXPENSES - 13-cv-01836 (RSM)

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................1

II.    SPECIFIC EFFORTS OF PLAINTIFFS' COUNSEL ........................................................2

III.   REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED
       IS AN APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES .................2

       A.   The Common Fund Doctrine ....................................................................................2

       B.   The Percentage-of-Fund Approach ...........................................................................3

       C.   Courts In This Circuit Have Awarded 33% Of The Common Fund As A
            Reasonable Fee .........................................................................................................4

IV.    A 33% AWARD IS REASONABLE IN THIS CASE .......................................................5

       A.   Lead Counsel Achieved An Excellent Result For The Class ...................................5

       B.   The Risks Of The Litigation .....................................................................................6

       C.   The Skill Required And The Quality And Efficiency Of The Work .......................7

       D.   The Contingent Nature Of The Case And The Financial Burden Carried
            By Plaintiffs' Counsel ...............................................................................................8

       E.   The Customary Fee ...................................................................................................9

       F.   A Lodestar Cross-Check Shows the Fee Request Is Reasonable ..............................9

       G.   The Reaction Of The Class Supports The Requested Award ................................11

V.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
       NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ............................................11

VI.    THE AWARD TO LEAD PLAINTIFF SHOULD BE APPROVED ...............................12

VII.   CONCLUSION .................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995) .................................................................................................. 12

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................................... 3, 4

*Arenson v. Bd. of Trade*,
  372 F. Supp. 1349 (N.D. Ill. 1974) ......................................................................................... 8

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................................ 5

*Blum v. Stevenson*,
  465 U.S. 886 (1984) ............................................................................................................ 3, 9

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
  8 F.3d 722 (10th Cir. 1993) .................................................................................................. 12

*Buccellato v. AT&T Operations, Inc.*,
  2011 WL 4526673 (N.D. Cal. June 30, 2011) ..................................................................... 12

*Campbell v. Best Buy Stores, L.P.*,
  2016 WL 6662719 (C.D. Cal. Apr. 5, 2016) .......................................................................... 5

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................................................... 6

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ................................................................................................... 4

*Cullen v. Whitman Medical Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ........................................................................................... 10

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) .................................................................................................. 3

*In re Crazy Eddie Sec. Litig.*,
  824 F. Supp. 320 (E.D.N.Y. 1993) ....................................................................................... 10

*Dyer v. Wells Fargo Bank, N.A.*,
  303 F.R.D. 326 (N.D. Cal. 2014) ......................................................................................... 11

*Eltman v. Grandma Lee's Inc.*,
    1986 WL 53400 (E.D.N.Y. May 28, 1986) .................................................................. 7

*In re Equity Funding Corp. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) .......................................................................... 8

*Fischel v. Equitable Life Assur.*,
    307 F.3d 997 (9th Cir. 2002) ..................................................................................... 9

*In re Giant Interatice Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................. 12

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ....................................................................................... 11

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .................................................................................................. 5

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) .......................................................... 7

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................. 11, 12

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976) ......................................................................... 6, 8

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ................................................................................. 3, 9

*In re Linerboard Antitrust Litig.*,
    2004 WL 1221350 (E.D. Pa. June 2, 2004) ............................................................ 10

*In re M.D.C. Holdings Sec. Litig.*,
    1990 WL 454747 (S.D. Cal. 1990) ........................................................................... 9

*In re Medical X-Ray Film Antitrust Litig.*,
    1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ............................................................ 10

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................. 4, 5

*In re Mercury Interactive Corp. Sec. Litig.*,
    2011 WL 826797 (N.D. Cal. Mar. 3, 2011) ............................................................ 10

*Millan v. Cascade Water Servs.*,
    2016 WL 3077710 (E.D. Cal. June 2, 2016) ............................................................ 5

LEAD PLAINTIFFS' MOTION                    iii              Zwerling, Schachter & Zwerling, LLP
FOR APPROVAL OF ATTORNEYS'                                 1904 Third Avenue, Suite 1030
FEES AND EXPENSES – 13-cv-01836 (RSM)                      Seattle, WA 98101-1170
                                                           Tel.: (206) 223-2053

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993) .................................................................................. 12

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) ................................................................................. 4, 5

*In re Nuvelo, Inc. Sec. Litig.*,
   2011 WL 2650592 (N.D. Cal. July 6, 2011) ................................................................. 9

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................... 5, 6, 7, 10

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ......................................................................................... 4, 5

*Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit,
   886 F.2d 268 (9th Cir. 1989) ....................................................................................... 3, 4

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ......................................................................................... 4

*Roberti v. OSI Sys., Inc.*,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ................................................................ 10

*Ratner v. Bennett*,
   1996 WL 243645 (E.D. Pa. May 8, 1996) ....................................................................... 5

*In re Ravisent Sec. Litig.*,
   2005 WL 906361 (E.D. Pa. April 18, 2005) ................................................................ 10

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ................................................................................ 10

*Schulte v. Fifth Third Bank*,
   2011 WL 3269340 (N.D. Ill. July 29, 2011) .................................................................. 4

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ......................................................................................... 3

*Steiner v. Am Broadcasting Co.*,
   248 F. App'x 780 (9th Cir. 2007) ................................................................................ 10

*Taylor v. Shippers Transport Express, Inc.*,
   2015 WL 12658458 (C.D. Cal. May 14, 2015) ............................................................. 5

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ............................................................................................. 3

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) .............................................................................. 4

*In re Veritas Software Corp. Sec. Litig.*,
   396 F. App'x 815 (3d Cir. 2010) ................................................................................ 12

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ....................................................................................... 2

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................... 9, 10

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ........................................................................... 3, 5, 7, 9

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ................................................................................... 4

*In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ....................................................................... 12

**Statutes**

15 U.S.C. §78u-4(a)(4) ................................................................................................... 12

15 U.S.C. § 78u-4(a)(6) ..................................................................................................... 4

LEAD PLAINTIFFS' MOTION  
FOR APPROVAL OF ATTORNEYS'  
FEES AND EXPENSES – 13-cv-01836 (RSM)

v

Zwerling, Schachter & Zwerling, LLP  
1904 Third Avenue, Suite 1030  
Seattle, WA 98101-1170  
Tel.: (206) 223-2053

## I.     INTRODUCTION[1]

The efforts of Lead Counsel, as described more fully in the Joint Declaration of Michael J. Wernke and Jeffrey C. Block filed herewith ("Joint Decl."), have achieved a substantial settlement consisting of a $3.5 million cash payment. Lead Counsel requests an award of fees in the amount 33% of the Gross Settlement Fund or $1,155,000 and an award of $2,000 to each of the Lead Plaintiffs. Such an award offers virtually no multiplier (1.03) on Plaintiffs' Counsel's lodestar. Plaintiffs' Counsel also request reimbursement from the Gross Settlement Fund of $62,704.91 in expenses incurred.

Solely through the efforts of Plaintiffs and their counsel was this recovery achieved. Lead Counsel zealously pursued this Action on appeal after this Court dismissed the case. This was no simple task, as the most recent results released from the Administrative Office of the U.S. Courts reveal that less than 9% of appeals result in a reversal.[2] Despite these long odds, counsel pursued the appeal which has yielded an excellent result.

The Settlement represents approximately 27% of Lead Plaintiffs' best-case estimate of damages for the Class. This is significantly higher than the 7.3% median settlement recovery as a percentage of estimated damages in securities class actions in 2016 where estimated damages were less than $50 million.[3] Throughout the litigation, the stakes have been large, the risks substantial, and the battles hard-fought. This recovery is the product of vigorous negotiations over many months. Indeed, the Parties were at an impasse until a Mediator's Recommendation was proposed by mediator Jed Melnick, Esq. to resolve the case for $3.5 million.

As detailed in the accompanying Joint Declaration, Lead Counsel vigorously pursued this litigation. Given the substantial recovery obtained for the Class, the complexity and amount of

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation and Agreement of Settlement dated March 23, 2018. ECF No. 90-1.
[2] See Just The Facts: U.S. Court of Appeals (available at http://www.uscourts.gov/news/2016/12/20/just-facts-us-courts-appeals).
[3] See Cornerstone Research, "Securities Class Action Settlements: 2016 Review and Analysis," at p. 8, Figure 7, available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Filings-2016-YIR.

| LEAD PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES – 13-cv-01836 (RSM) | 1 | Zwerling, Schachter & Zwerling, LLP<br>1904 Third Avenue, Suite 1030<br>Seattle, WA 98101-1170<br>Tel.: (206) 223-2053 |
|---|---|---|

work involved, the skill and expertise required, and the significant risks that Lead Counsel undertook, the requested award of 33% of the Settlement Amount is fair and reasonable, particularly where an award provides Lead Counsel with virtually no multiplier on its lodestar.

The reaction of the Class also strongly supports the requested fees and expenses. The deadline to file objections and to request exclusion to the Settlement is June 29, 2018. To date, no objections or requests for exclusion have been received.[4]

For the reasons set forth more fully below, Lead Counsel respectfully submit that such attorneys' fees and expenses are fair and reasonable under applicable legal standards and in light of the contingency risk undertaken and should be awarded by the Court.

## II. SPECIFIC EFFORTS OF PLAINTIFFS' COUNSEL

This was a complex case, with a host of factual and legal issues that Plaintiffs' Counsel had to convincingly address in order to achieve the Settlement. The efforts of Plaintiffs' Counsel are described in the Joint Decl. at ¶¶ 15-42.

## III. REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED IS AN APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES

### A. The Common Fund Doctrine

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). In *Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit explained the equitable principle underlying such fee awards:

> Since the Supreme Court's 1885 decision in *Central Railroad. & Banking Co. of Ga. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of

---

[4] Declaration of Jason Rabe Re Mailing of the Short-Form Notice and Publication of the Summary Notice, attached as Ex. 1 to the Joint Decl. ("Rust Decl.") ¶ 19.

| LEAD PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES – 13-cv-01836 (RSM) | 2 | Zwerling, Schachter & Zwerling, LLP<br>1904 Third Avenue, Suite 1030<br>Seattle, WA 98101-1170<br>Tel.: (206) 223-2053 |

those upon whom he has conferred a benefit. [...] The amount of such a reward is that which is deemed "reasonable" under the circumstances.

886 F.2d 268, 271 (9th Cir. 1989) ("*Paul, Johnson*") (emphasis in original; citations omitted). The purpose of this "common fund" doctrine is to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

### B. The Percentage-of-Fund Approach

In *Blum v. Stevenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the common fund doctrine a "reasonable" fee may be based "on a percentage of the fund bestowed on the class." In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage-of-recovery method in common fund cases.

Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in representative actions. There are compelling reasons why so many courts have opted for the percentage approach in common fund cases. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.[5] Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time required under the circumstances.[6] Third, use of the percentage-of-recovery method decreases the burden imposed on the court (by avoiding a

---

[5] *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) (noting that in the marketplace, attorneys and their clients routinely negotiate 25% to 40% percentage fees).

[6] *See Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) ("The lawyer gains only to the extent his client gains[,] ....ensur[ing] a reasonable proportion between the recovery and the fees assessed to the defendant . . . . reward[ing] exceptional success . . . penaliz[ing] failure . . . [and] automatically handl[ing] compensation for the uncertainty of litigation.").

LEAD PLAINTIFFS' MOTION
FOR APPROVAL OF ATTORNEYS'
FEES AND EXPENSES – 13-cv-01836 (RSM)

3

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

detailed and time-consuming lodestar analysis), while assuring that the beneficiaries do not experience unnecessary delay in receiving their share of the settlement. *See In re Activision*, 723 F. Supp. at 1378-79.[7] Indeed, the plain text of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See* 15 U.S.C. § 78u-4(a)(6). *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n. 7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

### C. Courts In This Circuit Have Awarded 33% Of The Common Fund As A Reasonable Fee

In *Paul, Johnson*, 886 F.2d at 273, the Ninth Circuit originally established 25% of the fund recovered as the "benchmark" award to be adjusted upward or downward depending on the circumstances of the particular case. *Accord Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *but see In re Activision*, 723 F. Supp. at 1377 ("This court's review of recent reported cases discloses that nearly all common fund fee awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Indeed, it is not unusual for courts to award fees in excess of 30% in appropriate circumstances. *See, e.g., Morris v. Lifescan, Inc.*, 54 F. App'x. 663, 664 (9th Cir. 2003) (approving 33% fee); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of 33.3% of $1.725 million settlement).[8]

---

[7] *See also In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989) ("straight contingent fee awards [are] bereft of largely judgmental and time-wasting computations of lodestars and multipliers").

[8] Courts routinely award fees of 30% or more in similarly sized settlements. *E.g Krystek v. Ruby Tuesday, Inc., et al.*, No. 3:14-cv-01119 (M.D. Tenn. Aug. 7, 2017) (ECF No. 117) (awarding 30% of common fund in $5 million settlement); *KB Partners I, LP v. Pain Therapeutics, Inc.*, No. 1:11-cv-01034-SS (W.D. Tex. Dec. 16, 2016) (awarding 30% of common fund in $7.5 million settlement); *In re Doral Financial Corp. Securities Litigation*, No. 3:14-cv-01393-GAG-BJM (D. P.R. Aug. 8, 2016) (ECF No. 116) (awarding 30% of common fund in $7 million settlement); *Schulte v. Fifth Third Bank*, 2011 WL 3269340, at *31 (N.D. Ill. July 29, 2011) ("A number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33-1/3% of the settlement fund is within the reasonable range"; approving 33.3% of $9.5 million); *Waters v. Int'l Precious Metals Corp.*,

LEAD PLAINTIFFS' MOTION  
FOR APPROVAL OF ATTORNEYS'  
FEES AND EXPENSES – 13-cv-01836 (RSM)

4

Zwerling, Schachter & Zwerling, LLP  
1904 Third Avenue, Suite 1030  
Seattle, WA 98101-1170  
Tel.: (206) 223-2053

The guiding principle remains that a fee award should be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296 (citation omitted). "[I]n most common fund cases, the award exceeds [the] benchmark." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (citations omitted); *Taylor v. Shippers Transport Express, Inc.,* 2015 WL 12658458, at *17 (C.D. Cal. May 14, 2015) (holding that 33% was reasonable given the result, the risk, and counsel's time investment); *Campbell v. Best Buy Stores,* 2016 WL 6662719, at *10 (C.D. Cal. Apr. 5, 2016) (approving a fee of one-third of the common fund); *Millan v. Cascade Water Servs.*, 12cv1821-AWI, EPG, 2016 WL 3077710, at *11-12 (E.D. Cal. June 2, 2016) (approving an award of 33% of the common fund); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (awarding one-third of the settlement fund). The Ninth Circuit has also upheld awards of one-third of a common fund. *See In re Mego Fin.*, 213 F.3d 460 (affirming an award of one-third of total recovery); *In re Pac. Enters.*, 47 F.3d at 379 (affirming an award of one-third of a $12 million common fund).

### IV.   A 33% AWARD IS REASONABLE IN THIS CASE

#### A.   Lead Counsel Achieved An Excellent Result For The Class

The result obtained for the Class, and the time expended by Lead Counsel, warrants an upward adjustment to the benchmark fee supporting the requested 33% award.

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"); *Morris*, 54 F. App'x at 664 (district court, granting a 33% fee, noted that class counsel achieved exceptional results in a risky and complicated class action); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976)

---

190 F.3d 1291, 1298 (11th Cir. 1999) (one-third award of $40 million); *Ratner v. Bennett*, 1996 WL 243645 (E.D. Pa. May 8, 1996) (35% award in securities action of $400,000); *In re Select Comfort Corp. Secs. Litig.*, No. 99-884 (D. Minn. Feb. 28, 2003) (awarding 33.3% of the $ 5,750,000 settlement).

LEAD PLAINTIFFS' MOTION
FOR APPROVAL OF ATTORNEYS'
FEES AND EXPENSES – 13-cv-01836 (RSM)

5

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

("[T]he amount of recovery, and end result achieved are of primary importance, for these are the true benefit to the client").

Here, counsel faced the daunting task of appealing the dismissal of this Action. The PSLRA sets a high pleading bar and securing a reversal was no easy feat. Plaintiffs and their counsel could have easily accepted the dismissal and moved on to another case. Instead, they vigorously pursued the appeal and through their skill, effort and tenacity were able to secure a reversal which has led to this recovery.

The payment of $3.5 million in cash to the Class will provide an excellent recovery. According to Lead Plaintiffs' damages consultants, damages in the case could be as high as $13 million. Joint Decl. ¶¶ 35-36. Therefore, the $3.5 million Settlement Amount represents approximately 27% of the maximum estimated damages, which is a significant recovery. *Id*. ¶ 90. According to Cornerstone Research, the median settlement as a percentage of estimated damages in 2016 where estimated damages were less than $50 million was 7.3%.[9] Thus, the recovery is almost four times the median percentage recovery. It is an excellent recovery for the Class. *See In re Omnivision*, 559 F. Supp. 2d at 1042 ($13.75 million settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses).

Thus, the results achieved by Lead Counsel, in light of the legal and factual complexity and magnitude of this case and the significant difficulties of establishing both liability and damages, are adequate, justifying an award of 33%.

### B.     The Risks Of The Litigation

The major risk facing the Class was that the Action was dismissed by this Court. The PSLRA substantially raised the pleading bar on securities class actions and pursuing a successful

---

[9] *See* Cornerstone Research, "Securities Class Action Settlements: 2016 Review and Analysis," at p. 8, Figure 7, *available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Filings-2016-YIR.

LEAD PLAINTIFFS' MOTION
FOR APPROVAL OF ATTORNEYS'
FEES AND EXPENSES – 13-cv-01836 (RSM)

6

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

appeal was even riskier. Had Plaintiffs and their counsel not appealed, the class would have obtained no recovery at all. Pursuing an appeal, of course, is always fraught with risk. According to the most recent statistics from the Administrative Office of the U.S. Courts, "[f]ewer than 9 percent of total appeals resulted in reversals of lower court decisions in 2015."[10] Despite these risks, counsel successfully appealed the Ninth Circuit and obtained the reversal.

Even after remand, however, there was risk that continued litigation might result in the Class (and Lead Counsel) not receiving any recovery at all, which is another important factor in determining a fair fee award. *See, e.g.*, *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of nonpayment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *In re Omnivision,* 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-301. Those risks are discussed in detail the Joint Declaration at ¶¶ 43-50.

**C.    The Skill Required And The Quality And Efficiency Of The Work**

The "prosecution and management of a complex national class action requires unique legal skills and abilities" – particularly in securities class actions. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Here, the quality of Lead Counsel's work on this case is reflected in the result obtained. The standing and prior experience of Lead Counsel are relevant in determining fair compensation. *See, e.g., Eltman v. Grandma Lee's Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). The Joint Declaration describes the background and experience of Lead Counsel. *See* Exs. 3A(3), 3B(3), and 3C(3) to Joint Declaration.

Lead Counsel's reputation as experienced and competent counsel in complex class action cases, facilitated Lead Counsel's ability to negotiate the Settlement, ultimately resulting in the $3.5 million recovery for the Class. As stated by the mediator, Mr. Melnick,

> From my involvement as the mediator for the case, I observed first-hand that this was an extremely hard-fought, arm's length negotiation resulting in a significant

---

[10] http://www.uscourts.gov/news/2016/12/20/just-facts-us-courts-appeals.

LEAD PLAINTIFFS' MOTION
FOR APPROVAL OF ATTORNEYS'
FEES AND EXPENSES – 13-cv-01836 (RSM)

7

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

> recovery for the Class and an equitable result for all involved. The advocacy on all sides was outstanding.
>
> Although clearly an issue for the Court to decide, in my view, based on my knowledge of this matter, all of the material provided to me, the extensive efforts of skillful advocacy and arm's-length bargaining of counsel, the litigation risks, and the benefits reached in the proposed Settlement, I believe that the Settlement is fair, reasonable, and adequate, and I respectfully recommend that it be approved by the Court.

Ex. 2 ¶¶ 8-9.

At every stage of the proceedings, Lead Counsel performed with a high level of skill, efficiency, and professionalism. In the face of strong opposition from a highly respected securities defense firm, Plaintiffs' Counsel assembled a case that survived Defendants' numerous attacks, as described in the Joint Decl. at ¶¶ 18-29. Indeed, the quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiff's Counsel. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Lead Plaintiffs were opposed in this litigation by a nationally respected firm, Wilson Sonsini Goodrich & Rosati. *See* Joint Decl. ¶ 86. In the face of this knowledgeable and formidable defense, Lead Counsel was able to develop a case that was sufficiently strong to overcome the heightened pleading standard of the PSLRA, and persuade Defendants, and their insurance carriers, to settle on terms that are favorable to the Class.

### D. The Contingent Nature Of The Case And The Financial Burden Carried By Plaintiffs' Counsel

The Ninth Circuit recognizes that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement. It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (citing *WPPSS,* 19 F.3d at 1299). Contingent fees in risky cases that

LEAD PLAINTIFFS' MOTION  
FOR APPROVAL OF ATTORNEYS'  
FEES AND EXPENSES – 13-cv-01836 (RSM)

8

Zwerling, Schachter & Zwerling, LLP  
1904 Third Avenue, Suite 1030  
Seattle, WA 98101-1170  
Tel.: (206) 223-2053

may exceed the market value of the services if rendered on a non-contingent basis are accepted by courts as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Lead Counsel has received no compensation over the course of the litigation and has incurred significant expenses in litigating for the benefit of the Class. Any fee award or expense reimbursement to Lead Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award.

### E. The Customary Fee

If this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Kirchoff*, 786 F.2d at 323 (40% contractual award if case had gone to trial). Thus, as the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is even greater than the percentage-of-recovery fee requested in this case, Plaintiff's Counsel's request is quite reasonable.

### F. A Lodestar Cross-Check Shows the Fee Request Is Reasonable

Courts often compare an attorney's lodestar with a fee request made under the percentage of the fund method as a "cross-check" on the reasonableness of the requested fee. *See, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002); *Fischel v. Equitable Life Assur.*, 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F. 3d at 1050.

LEAD PLAINTIFFS' MOTION  
FOR APPROVAL OF ATTORNEYS'  
FEES AND EXPENSES – 13-cv-01836 (RSM)

9

Zwerling, Schachter & Zwerling, LLP  
1904 Third Avenue, Suite 1030  
Seattle, WA 98101-1170  
Tel.: (206) 223-2053

Significantly, in securities class actions it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.[11] As we discuss, here, Lead Counsel, if awarded 33%, will receive virtually no multiplier at all (1.03).

Here, the total lodestar for Plaintiffs' Counsel for all work done in this Action through June 22, 2018 is $1,123,340.[12] *See* Joint Decl. Exs. 3A(1), 3B(1), and 3C(1). Thus, Lead Counsel's fee request is approximately equal to their total lodestar (*i.e.*, 1.03 times), if the 33% fee request is granted. Courts routinely allow counsel to obtain a significant multiplier on their loadstar. *See, e.g., Vizcaino,* 290 F.3d at 1051-52 (in approving a fee representing a multiple of 3.65 times counsel's lodestar, the court listed twenty-three shareholder settlements and the multipliers for each, in which the average multiplier was 3.28); *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *5 (C.D. Cal. Dec. 8, 2015) (approving settlement with lodestar multiplier of 2.2); *In re Hewlett-Packard Company Securities Litigation,* No. 11-cv-01404 (C.D. Cal. Sept. 15, 2014) (fee represented a multiplier of 1.9 of the lodestar); *In re Mercury Interactive Corp. Sec. Litig.*, 2011 WL 826797, at *2 (N.D. Cal. Mar. 3, 2011) (lodestar cross-check multiplier of 3.08 "is within the acceptable range"); *In re OmniVision*, 559 F. Supp. 2d at 1048 ("[C]ourts have approved multipliers ranging between 1 and 4."); *Steiner v. Am Broadcasting Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed"); *Steinfeld v. Discover Fin. Servs.*, 2014 WL1309692, at *2-3 (N.D. Cal. Mar. 31, 2014) (finding a 3.5 multiplier

---

[11] *See In re Ravisent Sec. Litig.*, 2005 WL 906361, *12 (E.D. Pa. April 18, 2005) (fee represented a multiplier of 3.1 of the lodestar); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *16 (E.D. Pa. June 2, 2004) (noting that from 2001 through 2003, the average multiplier approved in common fund cases was 4.35); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150-51 (E.D. Pa. 2000) (lodestar of $1.2 million would require multiplier of 2.04 in order to match awarded fees of one-third of $7.3 million common fund); *In re Safety Components Inc., Sec. Litig.*, 166 F. Supp.2d 72, 103 (D.N.J. 2001) (lodestar of $534,000 would require multiplier of 2.81 in order to match awarded fees of $1.5 million); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, *7 (E.D.N.Y. Aug. 7, 1998) (fee represented a multiplier on the attorneys' lodestar of 1.67); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326-27 (E.D.N.Y. 1993) (the equivalent of a 1.72 multiplier was applied to the attorneys' lodestar).

[12] The hours and lodestar submitted exclude all time devoted to Plaintiffs' Counsel's motion for fees and expenses.

LEAD PLAINTIFFS' MOTION
FOR APPROVAL OF ATTORNEYS'
FEES AND EXPENSES – 13-cv-01836 (RSM)

10

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

reasonable); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (approving attorneys' fees that resulted in lodestar multiplier of 2.83); *See also* Joint Decl. ¶ 96 (collecting cases). Thus, this factor supports the requested fee.

### G. The Reaction Of The Class Supports The Requested Award

5,041 Notices were mailed to potential Class Members and a Summary Notice was published in the *Investor's Business Daily.* Rust Decl., ¶ 11. Class Members were informed in the Notice that Lead Counsel would apply for attorneys' fees of up to 33% of the Settlement Fund, plus reimbursement of litigation costs and expenses up to $75,000 and were advised of their right to object to Lead Counsel's fee request. Rust Decl., Ex. A. To date, there has been no request for exclusion and no objections to the requested fee. *See Id.* ¶ 20.

### V. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's expenses are reasonable and were necessarily incurred as a part of Lead Counsel's efforts to achieve a very favorable recovery for the Class. To date, Lead Counsel has incurred expenses in an aggregate amount of $62,704.91 in prosecuting all claims in this Action. Joint Decl. ¶¶ 100-106. *See* Joint Decl. Ex. 3A(2), 3B(2), and 3C(2). The Notice apprised the Class Members that Lead Counsel would seek expenses in an amount not to exceed $75,000.

The Court should approve Lead Plaintiffs' request for reimbursement of Lead Counsel's expenses. "Reimbursement of taxable costs [in class action settlements] is governed by 28 U.S.C. § 1920 and Federal Rule of Civil procedure 54." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Courts interpreting these rules have found that counsel for the class are entitled to reimbursement for those types of out-of-pocket expenses that an attorney would normally expect the client to pay. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee-paying client" (citation omitted)); *see also In re Immune Response*, 497 F. Supp. 2d at 1177; *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722,

LEAD PLAINTIFFS' MOTION
FOR APPROVAL OF ATTORNEYS'
FEES AND EXPENSES – 13-cv-01836 (RSM)

11

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to a client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (same); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients") (citation omitted).

## VI. THE AWARD TO LEAD PLAINTIFF SHOULD BE APPROVED

Lead Plaintiffs also requests that the Court award each of them $2,000 in connection with their representation of the Class. The PSLRA provides that courts are empowered to approve such awards. *See* 15 U.S.C. §78u-4(a)(4). Lead Plaintiffs have diligently and completely fulfilled their obligations. *See* Joint Decl. Ex. 4-5 (Declarations of Lead Plaintiffs) Courts routinely award lead plaintiffs greater amounts. *E.g. In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 816 (3d Cir. 2010) ($15,000 for each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 to lead plaintiff); *In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (approving $100,000 award to lead plaintiffs, and noting that such awards are important because they further "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"); *In re Giant Interatice Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000 as an incentive); *In re Geron Corporation Securities Litigation*, 3:14-cv-01224-CRB (N.D. Cal. Jul. 21, 2017) (ECF No. 135) (awarding lead plaintiff $10,000 where case was settled prior to deposition (*see* ECF No. 129-7)).

## VII. CONCLUSION

Lead Counsel respectfully request that the Court approve the fee and expense application and enter the Order submitted herewith awarding Lead Counsel 33% of the Gross Settlement Fund plus reimbursement of $62,704.91 in expenses, and an award of $2,000 to each of the three Lead Plaintiffs.

LEAD PLAINTIFFS' MOTION
FOR APPROVAL OF ATTORNEYS'
FEES AND EXPENSES – 13-cv-01836 (RSM)

12

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053

|   |   |
|---|---|
| | Respectfully Submitted, |
| Dated: June 22, 2018 | **ZWERLING, SCHACHTER & ZWERLING LLP** |
| | */s/ Dan Drachler* |
| | Dan Drachler (WSBA #27728) |
| | 1904 Third Avenue, Suite 1030 |
| | Seattle, WA 98101-1170 |
| | (206) 223-2053 phone |
| | (206) 343-9636 fax |
| | ddrachler@zsz.com |
| | *Liaison Counsel for Lead Plaintiffs* |
| | **POMERANTZ LLP** |
| | Jeremy A. Lieberman, *pro hac vice* |
| | Marc I. Gross, *pro hac vice* |
| | Michael J. Wernke, *pro hac vice* |
| | 600 Third Avenue, 20th Floor |
| | New York, New York 10016 |
| | (212) 661-1100 phone |
| | (212) 661-8665 fax |
| | jalieberman@pomlaw.com |
| | migross@pomlaw.com |
| | mjwernke@pomlaw.com |
| | Patrick V. Dahlstrom |
| | 10 South LaSalle Street, Suite 3505 |
| | Chicago, Illinois 60603 |
| | (312) 377-1181 phone |
| | (312) 377-1184 fax |
| | pdahlstrom@pomlaw.com |
| | **BLOCK & LEVITON LLP** |
| | Jeffrey C. Block, *pro hac vice* |
| | Jacob A. Walker, *pro hac vice* |
| | 155 Federal Street, Suite 400 |
| | Boston, Massachusetts 02110 |
| | (617) 398-5600 phone |
| | (617) 507-6020 fax |
| | jeff@blockesq.com |
| | jake@blockesq.com |
| | *Co-Lead Counsel for Lead Plaintiffs and the Class* |

LEAD PLAINTIFFS' MOTION
FOR APPROVAL OF ATTORNEYS'
FEES AND EXPENSES – 13-cv-01836 (RSM)

13

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel.: (206) 223-2053